SHATTLOCK REALTY COMPANY, A CORPORATION (COMPLAINANT), RE-SPONDENT, v. ED. MAYS (DEFENDANT), APPELLANT.—63 S. W. (2d) 429.

St. Louis Court of Appeals. Opinion filed October 3, 1933.

*Charles G. Revelle* and *Courtney S. Goodman* for appellant.

1110

*Jeffries, Simpson & Plummer* for respondent.

McCULLEN, J.—This is an action in unlawful detainer brought by respondent, hereinafter called complainant, against appellant, hereinafter called defendant. A complaint in proper form was filed by complainant on January 6, 1932, before a justice of the peace in the City of St. Louis. A trial was had on January 13, 1932, and on January 15, 1932, the justice of the peace found that the property described in the complaint had been unlawfully detained by defendant. Judgment for complainant was rendered, it being ordered thereby that complainant have restitution of the property and also have judgment against defendant for $6,355.54, double the sum found by the justice of the peace for complainant's damages, and judgment against defendant at the rate of $3,666.66 per month, double the sum found by the justice of the peace for monthly rents and profits, from January 15, 1932, the date of said judgment, until restitution be made, and for costs.

Defendant duly appealed to the Circuit Court of the City of St. Louis, where, on March 14 and 15, 1932, the case was tried before the court and a jury, resulting in a verdict in which the jury found the defendant not guilty in manner and form as charged in the complaint. In due time complainant filed its motion for a new trial, which was sustained by the court on the ground that the verdict was

against the weight of the evidence. Defendant brings the case to this court by appeal.

The property involved is located on the northwest corner of Grand Boulevard and Olive Streets, in the City of St. Louis, Missouri, and consisted of several stores in the building known as Beers Hotel. The stores all fronted on Grand Boulevard. The evidence disclosed that defendant leased the premises in question from complainant under a written lease dated March 27, 1925, for a period of twelve years from August 1, 1925. The rental provided for the lease was $20,000 per annum, payable monthly, for the first six years of the term, and $22,000 per annum, payable monthly, for the remaining six years.

Among the provisions of the lease appears the following:

"At the expiration of this lease or the determination of the term hereby created, the said tenements and premises are to be surrendered to the lessor, its successors or assigns, in as good condition as when received, excepting natural wear and tear or the effects of accidental fire or windstorm, cyclone or other acts of God."

It was also provided in the lease that:

"Said lessee and all who may hold under him hereby engage to pay the rent above reserved, and double rent for every day he, or anyone in his name, shall hold onto the whole or any part of these premises after the expiration of this lease or after its forfeiture for any cause whatsoever. And in case of any forfeiture of this lease the said lessor or assigns shall be entitled to and may take immediate possession of said demised premise, any law, custom or usage to the contrary notwithstanding."

It was also further provided in the lease as follows:

"Any failure to pay each month's rent within fifteen days after the due date thereof, or to keep and perform any of the covenants and agreements herein contained shall produce a forfeiture of this lease if so determined by the lessor or its successors or assigns, without further notice or demand."

After the execution of the lease defendant was given possession of the premises and in turn he subleased the several stores to various persons and firms as he was permitted to do under the terms of his lease with complainant. The premises numbered 505 North Grand Boulevard were sublet by defendant to the Grand National Bank. Prior to the institution of the unlawful detainer suit, however, the Grand National Bank, of which defendant was an officer, had moved out of the premises and at the time of the suit this part of the premises was occupied by the Fair Stores. The store numbered 509 North Grand Boulevard was occupied by J. Gwynn Gough, who conducted a haberdashery therein. No. 511 North Grand Boulevard was occupied by Erker Bros. Optical Company. No. 513 North Grand Boulevard was occupied by Sugar Bowl Candy Company. No. 515

North Grand Boulevard was occupied by Famous Cleaning and Pressing Company and C. & K. Hamburger Stand, both of which establishments were owned by William Kocorakis and Christ Folias. It was conceded that these various tenants were in possession of their respective premises during the month of October, 1931, under their several subleases or arrangements with defendant.

On November 24, 1931, Edward Miller, vice-president of the complainant company, served on defendant personally, a notice to the effect that defendant was in default under the lease dated March 27, 1925, for failure to pay the rent for the months of October and November, 1931, totaling $3,666.66 for the two months. It was stated in the notice that the rental for each of the said months was more than fifteen days past due. The notice called defendant's attention to the forfeiture provisions of the lease, and contained a declaration that complainant thereby exercised its privilege of declaring the lease forfeited. The notice requested that defendant, for himself and on behalf of his subtenants, immediately surrender possession of the premises.

On the same day that the above mentioned notice was served on defendant, Mr. Miller, complainant's vice-president, also served a notice on each of defendant's subtenants. These notices were to the effect that the lease complainant had with defendant had been declared forfeited and that they, the tenants, were not entitled to continue in the possession of their respective premises under any arrangement they might have theretofore made with defendant. The subtenants were requested in the notices to surrender immediately to complainant, possession of their respective premises, and it was stated therein that on their failure to do so, unlawful detainer proceedings would be instituted against them.

It is conceded by defendant that complainant had the right to cancel and declare the lease forfeited and that the notices referred to were served upon defendant and upon the subtenants on November 24, 1931.

The only issue, therefore, in the case is whether or not defendant unlawfully detained the premises or held over after the action taken by complainant in canceling and declaring the lease forfeited.

Defendant contends that complainant failed to offer any evidence whatever to show that defendant detained the premises after the termination of the lease, but that on the contrary the evidence showed that the premises had been surrendered by defendant to complainant and that complainant resumed possession thereof upon the forfeiture and cancellation of the lease. Defendant insists that under such evidence the trial court should have sustained defendant's demurrer to the evidence which was offered at the close of complainant's case, and offered again at the close of the whole case.

On the other hand, complainant contends that defendant did not

establish his defense that possession of the premises was surrendered, and such possession retaken by complainant; that there was clear and substantial evidence in the case under which the jury should have returned a verdict for plaintiff, and that the action of the trial court in sustaining complainant's motion for a new trial on the ground that the verdict was against the weight of the evidence was correct and should be affirmed by this court.

The evidence showed that efforts were made by representatives of the complainant company to have the subtenants sign a document prepared by complainant's lawyer, in which the subtenants were asked to acknowledge that the lease between complainant and defendant had been forfeited, and stating that they, the subtenants, were willing to surrender the possession of the premises to complainant. This document was presented to the various subtenants, but none of them ever signed it. Unlawful detainer suits were filed by complainant against two of the subtenants in addition to the suit against defendant herein.

It is complainant's contention that it did not obtain possession of the entire premises until about February 1, 1932, after the institution of the three unlawful detainer suits in which judgment for possession was obtained by complainant. Complainant obtained judgment for possession in the suits which it brought against the Sugar Bowl Candy Company, and the Fair Stores Corporation, but no damages were awarded in those cases for the detention. It appears from the evidence that defendant was a director in the Fair Stores Corporation, defendant in one of the unlawful detainer suits above mentioned.

It is undisputed that Mr. Miller, complainant's vice-president, had several conversations with some of the subtenants after defendant's lease was canceled, in which were discussed the making of new leases between such tenants and the complainant.

Counsel for defendant argue that the evidence with respect to these conversations between the subtenants and the vice-president of complainant company shows that complainant was making every effort to keep such tenants in possession of their respective premises and, therefore, was not trying to oust them. It is pointed out by defendant's counsel that complainant's vice-president frankly admitted that the only reason he had caused an unlawful detainer suit to be instituted against the Sugar Bowl Candy Company was that he understood defendant had a mortgage on it, and the only reason suit was instituted against the Fair Stores Corporation was because he thought defendant had some interest in that company.

It is further pointed out by counsel for defendant that complainant's vice-president also frankly admitted that all of the other subtenants were permitted to remain in the premises without action being taken to dispossess them, and that complainant's vice-president

admitted that he. was trying to arrange to have them continue as tenants if he could.

From the foregoing and other evidence in the case of similar import, defendant's counsel contend that it clearly appears that defendant had surrendered possession thereof within a few days after the notices heretofore mentioned were served.

Testifying in rebuttal, Mr. Miller, complainant's vice-president, denied that he had made any agreement with any of the subtenants whereby they could remain in their premises, and said that the first time he saw any of the subtenants in connection with the matter was immediately before Christmas, 1931.

Defendant himself testified that some of the subtenants came to his office to talk to him concerning complainant's cancellation of defendant's lease; that they came there about the time he received the notice to surrender the premises. He said that the subtenants wanted to know, "What about it," and he told them he didn't know, but that he wanted to look into the matter, and he asked them to come back in a few days; that he would have to see Mr. Miller; that Mr. Miller was in possession. Defendant further testified that shortly thereafter he told the subtenants that his own lease had been cancelled and that they must deal with Mr. Miller.

William Kocorakis, one of defendant's subtenants, testified that after the notice was served on him on November 24, 1931, defendant told him just to keep right on in the premises, and said to him: "You deal with me yet." This witness testified further that defendant told him, "To stay in there like always."

It is earnestly urged by counsel for defendant that the actions and conduct of Mr. Miller, complainant's vice-president, in carrying on negotiations with the various subtenants, and with the Vandeventer Trust Company, which company was not a subtenant of defendant, looking toward arrangements for leases for the future, show that complainant company had resumed possession of the premises, and that hence there was no unlawful detainer thereof by defendant.

On the other hand, it is the contention of complainant's counsel that. the fact that complainant's vice-president did enter into such negotiations with the subtenants in possession of the property, shows that the premises were not surrendered to him, but that on the contrary he was thereby performing the duty devolving on him of attempting to obtain such possession, and that after these negotiations had failed, complainant instituted unlawful detainer suits in the proper way to recover such possession through the courts.

There was much testimony introduced showing in detail the conversations and conduct of the parties and their attorneys and representatives, but it would unnecessarily lengthen this opinion to set forth such evidence here. We believe that the outline which we have given is sufficient to show that there was substantial evidence in

the record upon which a verdict for plaintiff could be supported and that the court's action in overruling defendant's demurrers to the evidence was correct.

In the case of D. A. Schulte, Inc., v. Haas (Mo. App.), 287 S. W. 816, 818, the court said:

"A surrender occurs either by express agreement of the parties or by operation of law. It occurs by operation of law by reason of certain acts of the parties indicating the assent of the landlord to accept the surrender. [Sander v. Holstein Commission Co., 121 Mo. App. 293, 298, 99 S. W. 12; 35 C. J. 1090.] *Before there can be a surrender by operation of law there must be a taking possession of the premises by the landlord with the intent of releasing the tenant from further payment of the rent.* [Leggett v. Exposition Co., 157 Mo. App. 108, 119, 137 S. W. 893.] Whether there has been a surrender by operation of law is a matter of intention of the parties, to be arrived at from their conduct, *and is usually a question of fact for the jury.*" (Emphasis ours.)

In the case of Sander v. Commission Co., 121 Mo. App. 293, 298, 99 S. W. 12, it was said:

"A surrender of a term must have the concurrence of both landlord and tenant. It may be express or inferred from certain acts of a landlord. If there is no proof of any express assent by the landlord to accept a surrender, but circumstances go to show an acceptance, *they are for the jury unless they are conclusive as to the landlord's intention.*" (Emphasis ours.)

As we have heretofore stated, the sole defense made by defendant was that there had been a complete surrender and delivery of the premises in question by him to complainant and that he was, therefore, not guilty of unlawfully detaining the premises. We are of the opinion the trial court in this case, under the evidence, could not properly have declared as a matter of law that there was a complete surrender by defendant to complainant of the premises involved herein. It was a case properly submissible to the jury.

The action of the trial court in sustaining complainant's motion for a new trial on the ground that the verdict was against the weight of the evidence was within the discretion of that court. Such action on the part of a trial court is not to be interfered with or disturbed by an appellate court unless it conclusively appears that no verdict in favor of the complainant could ever be allowed to stand, and that the trial court has unjustly or arbitrarily exercised its discretion in the granting of a new trial. [Riche v. City of St. Joseph, 326 Mo. 691, 32 S. W. (2d) 578; Ottomeyer v. Pritchett, 178 Mo. 160, 77 S. W. 62; Gottschalk v. Wells (Mo.), 274 S. W. 399.]

In the last above named case the court said:

"It must be said that there is a sound discretion lodged in trial

1116

courts in the matter of granting new trials upon weight of the evidence." [Gottschalk v. Wells, supra.]

In McCarty v. Transit Co., 192 Mo. 404, 91 S. W. 134, the court said:

"This court will not interfere with the discretion of the trial court in granting one new trial on a question of fact, except in a case where the plaintiff would not be entitled to any recovery."

Under the evidence in this case, the trial court did not unjustly or arbitrarily exercise its discretion to grant a new trial. The order granting the new trial is, therefore, sustained and affirmed and the cause remanded to the end that a new trial may be had. *Becker, P. J.*, and *Kane, J.*, concur.