EDNA R. AUT, APPELLANT, V. ST. LOUIS PUBLIC SERVICE COMPANY, A
CORPORATION, RESPONDENT.—194 S. W. (2d) 753.

St. Louis Court of Appeals. Opinion filed May 21, 1946.

*Mortimer A. Rosecan* and *Chelsea O. Inman* for appellant.

*Mattingly, Berthold, Jones & Richards* and *Douglas H. Jones* for respondent.

McCULLEN, J.—This is an action for damages for personal injuries. It was begun by Edna R. Aut as plaintiff originally against the St. Louis Public Service Company, a Corporation, and Ewald O. Hoelscher. In her petition plaintiff charged each of said defendants with negligence. A trial before the court and a jury resulted in a verdict in favor of defendant Hoelscher and against the defendant St. Louis Service Company assessing plaintiff's damages at the sum of $7500. St. Louis Public Service Company, hereinafter referred to as defendant, duly filed a motion for a new trial which the court sustained on specification No. 5 thereof, ordered a new trial on the issue of damages only and overruled the motion as to other specifications. Specification No. 5 was as follows: "Because the verdict is excessive." Plaintiff duly appealed from the court's order granting defendant a new trial.

1140

Plaintiff, who is a deaf mute, testified by sign language through her son, Ferdinand Aut, as interpreter. She stated that she was employed by Barton Manufacturing Company as a machine operator earning $24.13 per week; that she had been employed by that company for fourteen years; that on January 8, 1945, while she was a passenger on a motorbus of the St. Louis Public Service Company she sustained injuries which resulted from a collision between the motorbus which was being operated eastwardly on Carter Avenue in the City of St. Louis, and an automobile driven by defendant Hoelscher westwardly on Carter Avenue. The collision occurred at the intersection of Clay Avenue with Carter Avenue. Plaintiff testified that at the time of the accident she was returning to her home from work, having boarded the bus at Penrose Avenue and Kingshighway; that she was seated on the aisle seat with her back to the wall, near the front of the bus; that the bus was proceeding eastwardly on Carter Avenue and when it reached the intersection with Clay Avenue it collided with an automobile; that she was thrown to the floor, striking her head, wrenching her neck, and also striking her right shoulder, back and buttocks; that immediately after the accident she was semi-conscious and then felt pain and had a severe headache. She stated that after the bus collided with the automobile the bus struck a tree; that when the collision occurred she was thrown from her seat in the front of the bus onto the floor by the impact and then slid along the floor when the bus struck the tree; that after the collision she was in pain all over her body and had a terrible headache and was highly nervous; that she went to her home on another Walnut Park bus and called Dr. W. W. Farris and went to bed; that Dr. Farris massaged her neck, but a heavy adhesive tape on her side, and gave her aspirin and another sedative; that she remained in bed three weeks, during which time she continued to have severe headaches, pains in the buttocks and into the right hip. Plaintiff returned to work on January 29, 1945, but while working continued to have severe pains in the same parts of her body that had been injured. She was treated by Dr. Farris seven times, and in the latter part of February, 1945, Dr. Farris advised that she take some lamp treatments, which she did every morning and evening, treating the hip, back, neck and shoulder. These treatments were taken at home. She lost twenty pounds following the accident, her weight having gone from 173 to 153 pounds. She does not sleep well but tosses and turns to the pain on her right side, has severe headaches every two or three days, for which she takes aspirin and other pills. She had never had any pain in the parts of her body injured, but had had a headache every four or five months. When she turns her neck to the right side she has pain and also has pain in the right hip and sacroiliac region in the evenings after she has been standing

at her work. She had no other doctors but was examined by Dr. F. G. Pernoud shortly before the trial.

Dr. W. W. Farris, plaintiff's family doctor, testified that when he saw plaintiff at her home on the evening of January 8, 1945, she was in a highly nervous state and suffering quite a bit with pains. Her complaints were mostly headaches and backache with symptoms of sacro-iliac strain. The right hip was discolored from bruising. There were evidences of sprain of the neck, with tenderness on pressure, and a bruise on her head in the back part of the parietal region. The doctor administered nerve sedatives and applied an adhesive tape bandage to her back. The doctor visited her at her home for two weeks and she was in bed most of the time complaining of pain in the back and headache. After that she came to his office several times and he applied light treatments to the lower spine and hips. The doctor stated that plaintiff returned to work three weeks after the accident. The doctor's diagnosis with respect to the head pains was that they were caused by concussion of the brain. The doctor said that her injuries and complaints could result from the accident which was described to him. He further testified that in his opinion the headaches will persist indefinitely and that "for all practical purposes they are permanent"; that the nervousness and pain she suffered could cause the loss of appetite; that plaintiff had had a severance or strain of the tough ligaments of the sacro-iliac region; that there was also a sprain of the right hip and of the neck; that the last time he saw her was the last of February or the first of March, 1945, when he discharged her and suggested that she get a therapeutic light and use it at home; that he saw her the Saturday before this trial and that she complained still of nervous headaches and that she stated she was unable to sleep for pain in the back when she lies in certain positions. The doctor stated that he took no X-rays because he found no evidence of bone fracture, having found only a sprain of the ligaments, which is painful.

Dr. F. G. Pernoud testified on behalf of plaintiff that on September 11, 1945, he was called to examine plaintiff for the purpose of testifying at the trial which took place on September 19, 1945; that he found tenderness on pressure at the lower end of plaintiff's spine and about the right sacro-iliac joint, and that plaintiff complained of headaches; that she did not complain of tenderness or disability about her neck; that he found nothing to show that she had disability about her neck but that she did complain of frequent headaches. The doctor stated that sustained pain causes nervousness and loss of appetite; that the headaches necessarily resulted from the brain concussion, which is a vibration through the soft structure causing minute tears of the nerve tissues and nerve fibres. The doctor gave it as his opinion that the injuries and complaints of plaintiff which were described to him were the result of the accident described. He

stated that in a woman of plaintiff's age and situation these injuries "are usually permanent." Plaintiff was fifty years of age. The doctor testified that concussion of the brain always leaves some permanent damage; that the tearing of the nerves and blood vessels results in scar tissue by the healing process and that is permanent although it may be of small or great degree. On being asked as to whether or not the condition in the back and the right hip and headaches were permanent, the doctor stated "they may or may not be."

Plaintiff contends that the verdict was not excessive and that the trial court erred in holding it was. It is argued that the award of damages in this case is consistent with awards approved in cases involving similar injuries, and plaintiff cites in support of this contention a number of cases. Defendant contends to the contrary, that there was neither pleading nor proof of permanent injuries or disability and that, therefore, it was the duty of the court to set aside the verdict for $7500, which was clearly excessive. Defendant is in error in stating that there was no pleading or evidence of permanent injuries. Defendant has overlooked that part of plaintiff's petition wherein it is alleged, . . . and that plaintiff was thrown in and about said motorbus as a result of said collision and sustained permanent bodily injuries, said injuries consisting of . . . " Furthermore, Dr. Farris testified on behalf of plaintiff that her headaches were "for all practical purposes permanent." Dr. Pernoud also testified for plaintiff that concussion of the brain "results in some permanent injury; it may be very, very slight; but I describe a concussion of the brain as a vibratory force which goes through that brain . . . "

It will be observed that although plaintiff did adduce some evidence of permanency as to some of her injuries, such evidence was far from positive and certain. On the contrary, it was all more or less qualified. Furthermore, the injuries, even though painful at first, cannot properly be classed as serious. We have read the cases cited by both parties on this point and have reached the conclusion that the trial court was justified in finding that the verdict of $7500 was not in line with verdicts for injuries of a similar nature in cases where the amount of damages has been considered by our appellate courts.

It would unnecessarily lengthen this opinion and serve no useful purpose for us to analyze and discuss the many cases pro and con cited on this point by the parties. After all, as has been held by our Supreme Court, prior decisions are advisory and not controlling on the question of damages in personal injury cases. Although a standard of uniformity should be kept in mind, nevertheless, each such case presents its own problem on its facts. [Colwell v. St. Louis-San Francisco R. Co., 335 Mo. 494, 73 S. W. (2d) 222; Schaefer v. Transamerican Freight Lines (Mo.), 173 S. W. (2d) 20.]

Looking to the facts in this case, it will be recalled that plaintiff was able to return to her work three weeks after the accident although

she continued to have pain. Her own doctor discharged her in less than two months. There were no broken bones nor was there any unqualified positive testimony that any particular injury was permanent. For example, Dr. Farris testified as to plaintiff's headaches that he "would say they will last indefinitely." However, he qualified that statement by saying: "We couldn't be positive that they will last as long as she lives but you might say for all practical purposes they are permanent." The qualified nature of Dr. Farris' testimony is further shown in the following:

"Q. She obviously isn't so seriously injured that she couldn't carry on that job, is she? A. Well, there is different degrees of seriousness.

"Q. Well, I say, obviously she isn't so seriously injured that she couldn't carry on that work? A. That's right."

Dr. Pernoud was asked if he had an opinion based upon reasonable medical certainty as to whether the condition in plaintiff's back and her right hip and the headaches are permanent or not. The doctor answered, "Well, they may or may not be." He followed the last quoted statement with a discussion of plaintiff's age and his examination of her nine months after the accident, saying, "and she had this difficulty then— I don't think any of us can definitely say which one of those cases will get well and which won't; we know they have difficulty over long or indefinite periods of time, but the majority of cases at her age and her peculiar station, physical station, would not get well; they would have pain indefinitely throughout their life, but some may show some improvement and some of them may even get well but most of them don't."

It will thus be noted that both doctors who testified for plaintiff very carefully refrained from saying positively and unqualifiedly that plaintiff's injuries were really permanent.

The granting of a new trial on the ground that the verdict is excessive is equivalent to the granting of a new trial on the ground that the verdict is against the weight of the evidence. [Stegner v. Missouri-Kansas-Texas R. Co., 333 Mo. 1182, 64 S. W. (2d) 691; Hunt v. Gus Gillerman Iron & Metal Co., 327 Mo. 887, 39 S. W. (2d) 369.] Under Section 115, Laws of Mo. 1943, p. 388 (Mo. R. S. A., section 847.115), it was clearly within the discretion of the trial court to grant a new trial on the ground that the verdict was against the weight of the evidence. [Bollinger v. Mungle (Mo. App.), 175 S. W. (2d) 912, 916; State ex rel. Spears v. Hughes, 346 Mo. 421, 142 S. W. (2d) 3; Shattlock Realty Co. v. Mays, 228 Mo. App. 1108, 63 S. W. (2d) 429, 432; Inter-State Oil Co. v. Equity Mut. Ins. Co. (Mo. App.), 183 S. W. (2d) 328.]

Plaintiff, although insisting that the verdict of $7500 was not excessive and that it should be reinstated in full, nevertheless argues that the trial judge erred in failing to enter an order giving her

an opportunity to file a *remittitur* as an alternative to his granting a new trial to defendant on the issue of damages. It is earnestly argued by plaintiff that the matter of excessive damages is cured in the trial and appellate courts by enforced *remittitur*. Plaintiff also states that the New Civil Code (Laws of Missouri 1943, section 115, p. 388, Mo. R. S. A., section 847.115) did not confer upon the trial court any new power because the trial court always had the power to grant a new trial upon the measure of damages only. Plaintiff's last-mentioned statement is correct but we do not see how it gives any support to plaintiff's theory, which is, that the court cannot grant a new trial on the issue of damages without first giving plaintiff a chance to file a *remittitur*. A number of cases are cited in support of her theory. We shall refer to said cases later. There can be no doubt that our courts have in many cases given plaintiffs an opportunity to file *remittiturs* to reduce the amount of damages as an alternative to having to undergo another trial. The reason underlying this practice is to avoid further unnecessary trials and to terminate litigation. However, we have found no case in which it was held that it is mandatory upon a trial judge to enter an order giving the plaintiff an opportunity to file a *remittitur* before the judge is authorized to grant a new trial on the issue of damages only. Section 115, Laws of Missouri 1943, supra, provides among other things:

"A new trial may be granted to all or any of the parties and *on all or part of the issues* after trial by jury, court or referee." (Emphasis ours.)

It is clear that under the above statute there is no such prerequisite as plaintiff contends for herein. The fact that trial and appellate courts frequently do resort to the *remittitur* practice does not mean that they are required to do so. We know of no statute that requires it, nor have we found any decision so holding. Whether or not a *remittitur* shall be suggested is a matter which is left to the sound discretion of the courts. In none of the cases cited by plaintiff did the court go so far as to hold that such *remittitur* practice must be followed in all cases regardless of the facts shown in evidence.

An examination of the cases cited by plaintiff on this point shows that the injuries involved therein were of such a tangible nature and extent that the court could with a reasonable degree of certainty separate the excessive damages from those considered just and fair. For instance, in Turner v. Central Hardware Co. (Mo.), 186 S. W. (2d) 603, cited by plaintiff herein, there was a verdict for $15,000 damages for plaintiff, a 57-year-old man, who had sustained a badly comminuted fracture in the left tibia that extended into the knee joint, resulting in a loss of $1250 in wages, and requiring medical expenses totaling $600. He was in a hospital five weeks in a cast, then on crutches, he had a fifty per cent permanent disability of the knee, there was a shortening of one inch in his left leg, the left

knee was about one and one-fourth inches larger than the right, the left ankle was two inches larger than the right, there was a lateral instability in the knee and permanent partial loss in flexion. The Supreme Court held in that case that the damages were excessive by $5,0000. However, it will be noted that we have no such objective tangible injuries in the case at bar as were considered by the court in the Turner case, *supra*.

In Jones v. Pennsylvania R. Co., cited by plaintiff herein, there was a verdict and judgment for $203,167 in favor of an 18-year-old brakeman for the loss of a leg and a thumb and numerous fractures causing immobilization, great pain and the necessity of constant attendance. The Supreme Court held that the verdict was excessive and authorized the granting of a second new trial on the theory of passion and prejudice on the part of the jury although the first trial had resulted in a verdict for $175,000. In that case although the court said that mere excessiveness of an award of damages is corrected in the trial court and in the reviewing court by a *remittitur* rather than retrial, the court also said that the exercise of the power to correct verdicts by the reduction of an excessive award is "peculiarly within the sound discretion of the trial court inasmuch as that court may weigh the evidence as to the nature and extent of a plaintiff's injury and see the effect of the trial proceedings." The court further said: "the appellate court is reluctant to disturb the trial court's action in such exercise, unless it appears that the trial court has acted arbitrarily." [Jones v. Pennsylvania R. Co. (Mo.), 182 S. W. (2d) 157, 1. c. 159.] The order granting the new trial in the Jones case, *supra,* was besed upon the ground that the verdict was so grossly excessive as to indicate it was the result of passion and prejudice on the part of the jury against the defendant and of favor and partiality on their part for plaintiff. It is true that the trial court in the case at bar overruled a similar ground of complaint herein, nevertheless there is nothing in the Jones case, *supra,* that would justify us in holding that the trial judge herein acted "arbitrarily" or abused his discretion in granting a new trial on the issue of damages without first resorting to the *remittitur* practice. We think that on the evidence in this case the trial court's action was "peculiarly within the sound discretion" of that court and should not be interfered with. [Jones v. Pennsylvania R. Co., *supra.*]

In Borgstede v. G. H. Wetterau & Sons Grocery Co. (Mo. App.), 116 S. W. (2d) 179, cited by plaintiff herein, the court sustained plaintiff's motion for a new trial on the ground that the verdict of the jury was inadequate. In that case the court, in granting the new trial, ordered that the verdict and judgment as to the liability of the defendant stand in force and that the new trial be limited solely to the issue of the amount of damages to which plaintiff was entitled. It was the defendant in that case who appealed. This court, in

affirming the action of the trial court held that, since the error in the case related only to a particular issue which was in no way dependent for its proper trial on other issues as to which there was no error, the trial court's action in granting such separate trial as to damages was correct.

In Joice v. Missouri-Kansas-Texas R. Co., 189 S. W. (2d) 568, cited by plaintiff herein, the plaintiff's damages were assessed by the jury at $80,000. The Supreme Court gave the plaintiff an opportunity to remit the sum of $15,000 within ten days, otherwise the judgment would be reversed and the cause remanded for a new trial. In that case the plaintiff's injuries were of a tangible objective nature. He was required to have his right leg amputated, his right arm was broken at the elbow, his third, fourth and fifth ribs were cracked and there were fractures of the sixth and seventh ribs with some displacement. One of the plaintiff's doctors said that plaintiff was "totally disabled" for life so far as performing manual labor was concerned. From such evidence the court in the exercise of its discretion deemed it proper to require a *remittitur* but we think it is clear that there was a proper basis in the evidence for the exercise of the court's discretion in that respect.

In the case at bar there is no substantial basis in the evidence as to tangible objective injuries upon which the court could fix an amount of damages that would be just and reasonable compensation for the injuries involved. The only thing the trial court could have done in suggesting a *remittitur* would have been to guess at what amount would be proper. Most certainly, since the evidence shows that any attempt on the part of the trial court to fix the amount of a *remittitur* would be mere guesswork, it necessarily follows that any attempt by this court to exercise that power would also be mere guesswork.

The other cases cited by plaintiff on this point are similar to those which we have just reviewed, in that the injuries were of a tangible objective nature, and in that respect unlike those involved in the case at bar.

In interpreting opinions of courts we must observe the rule which requires that opinions are to be read in the light of the facts and issues in the case in which the opinion was written. [Morse v. Consolidated Underwriters, 349 Mo. 785, 163 S. W. (2d) 586; Keeton v. Gaiser, 331 Mo. 499, 55 S. W. (2d) 302.] Applying the last-mentioned rule to the cases cited by plaintiff, it is apparent that they are clearly distinguishable from the case at bar on the facts and are, therefore, not controlling in this case.

It is, of course, true that courts should avoid requiring unnecessary new trials where the facts justify interference by way of *remittitur* but it is equally true that they should also avoid substituting in the place of a jury's verdict their own ideas and conjectures as to what

is the proper amount of damages when they are convinced that justice will be better served by granting a new trial, thus permitting another jury to pass on the issue of damages alone, there being no error on any other issue in the case.

Where, as in the case at bar, the evidence shows plaintiff's injuries, aside from slight bruises, were of a subjective nature, and there is no positive and certain evidence as to their permanency and it is undisputed that she was able to return to work in three weeks and yet the jury returned a verdict for such a sum as $7500, we cannot say that the trial court erred in granting a new trial so as to permit another jury to pass on the issue of damages. Furthermore, the nature and extent of plaintiff's injuries being what they are, it is clear that this court is in a much less favorable position than was the trial court to determine what amount would be just and fair to be awarded to plaintiff as damages for her injuries. The trial court saw and heard plaintiff herself and all the witnesses and was, therefore, in a position to weigh their testimony. We in this court have nothing but the cold record before us. The views which we have expressed herein on the *remittitur* practice evidently met with the approval of plaintiff for we find in her own brief on page 9 the following: ". . . no Court can reasonably substitute its judgment for that of the jury in evaluating damages for pain and suffering."

After all, it must be remembered that in the *remittitur* practice the court has no power to compel a plaintiff to file a *remittitur* either large or small. The court merely suggests a *remittitur* of a certain amount to be filed by plaintiff within a specified time as an alternative to the court's granting defendant a new trial. The decision as to whether a *remittitur* will be filed rests exclusively with the plaintiff. If plaintiff fails or refuses to file a *remittitur*, the court then resorts to the alternative of entering the order for the new trial.

We think it is not amiss to say that we know of nothing that would have prevented plaintiff from offering to cut down the amount of damages by voluntarily filing a *remittitur* without any order or suggestion by the court. The fact that she had that right, we think, shows the error of the view that the court could not grant a new trial on damages without the prerequisite of an order for a *remittitur*.

We hold that under the statute (Section 115, Laws of Missouri 1943, p. 388, *supra*) and the evidence the trial judge had power to grant defendant a new trial on the issue of damages alone.

The order granting the defendant a new trial is affirmed and the cause remanded for such new trial. *Hughes, P. J.*, and *Anderson, J.*, concur.