Elizabeth Lilly, Respondent, v. Richard Boswell and Thomas E. Boswell, Appellants, No. 42240—242 S. W. (2d) 73.

Division One, July 11, 1951.

Motion for Rehearing or to Transfer to Banc Overruled, September 10, 1951.

*Oliver & Oliver* and *Jack L. Oliver* for appellants.

446

448

*Limbaugh & Limbaugh* for respondent.

450

■ HOLLINGSWORTH, J.—This is an action to recover damages in the sum of $25,000 for personal injuries sustained by plaintiff (respondent) in an automobile collision. The case was submitted under the humanitarian doctrine. Following a verdict for $1750, plaintiff filed a limited motion for new trial of the issue of damages only on the ground the verdict was grossly inadequate, which motion the court sustained. Defendants appeal, assigning as error: (1) that plaintiff failed to make a submissible case, and (2) the sustaining of plaintiff's limited motion for new trial on the issue of damages.

The evidence is stated from the standpoint most favorable to plaintiff.

The collision occurred near the noon hour on Sunday, the 10th day of April, 1949, at the intersection of Ellis and Independence Streets in the City of Cape Girardeau, Missouri. Ellis Street is 39 feet, 8 inches, in width and extends north and south. Independence Street is 37 feet, 4 inches, in width and extends east and west. A stop sign, two feet wide and elevated six inches above the level of the pavement, is embedded in the center of Ellis Street, 7 feet and 9 inches south of its intersection with ■ Independence. Independence is a major or "through" street.

Plaintiff was riding in the rear seat of an automobile owned by her son-in-law, Lawrence B. Fendler, and driven by her daughter, Elizabeth Fendler. In the front seat with Elizabeth Fendler were her husband, Lawrence, and their small son. Two other of their children were in the rear seat with plaintiff. The Fendlers and plaintiff were residents of St. Louis County. They had come to Cape Girardeau on Saturday looking for business possibilities. On

the morning of the collision, they had attended church and, at the time of the collision, were driving north on Ellis Street. Defendant Richard Boswell, age eighteen years, accompanied by his mother, his sister and a neighbor girl, had gone to another church in an automobile owned by his father, defendant Thomas E. Boswell. Following the service, they started to their home in the Boswell car, Richard Boswell driving. At the time of the collision they were traveling west on Independence Street.

As the Fendler car, proceeding north on Ellis at 15 to 20 miles per hour, approached the intersection of Independence, Mrs. Fendler and Mr. Fendler noticed the unusual placement of the stop sign, commented upon it, and Mrs. Fendler brought the car to a stop at the sign. She looked to the east and could see a full block down the street. She saw the Boswell car about "half or three-quarters of the way down the street." There was nothing unusual about its speed and Mrs. Fendler assumed she had "plenty of time" to cross Independence. There was no other traffic approaching the intersection. She shifted gears and started across the street in low gear. As she proceeded across the street she was engaged in shifting from low to high gear. When she had gotten three-fourths of the way across the intersection, she realized that the Boswell car was going to strike their car. She exclaimed to the children to "watch out; he is going to hit us", and the collision occurred at that moment. When she realized the collision was imminent, she swerved to the left, but there was not time or space to permit a "violent" swerve. She also attempted to apply her brakes. The Boswell car struck the right side of the Fendler car near the door. The Fendler car then rolled on to the northwest corner of the intersection, across a sidewalk, and struck a concrete retaining wall. Other than the testimony of defendant Richard Boswell, to which we will refer, there was no testimony as to the rate of speed at which the Fendler car was traveling from the time it entered the intersection to the point of collision. Richard Boswell, called as a witness by plaintiff, testified that as he drove west on Independence he was driving at 20 miles per hour when he first saw the Fendler car; that he was then 60 feet east of the intersection; that the Fendler car was on Ellis Street about ten feet south of the intersection with Independence when he first saw it; that he assumed it would stop at the sign and continued his speed of 20 miles per hour from the time he first saw it until within 12 feet of the collision; that the Fendler car was traveling about the same speed as defendants' car when he first saw it and he did not know whether it slowed down at the stop sign; he just knew it did not stop at the sign, but came on through the intersection and never stopped from the time he first saw it until after the collision; that he was 40 feet from it when he realized it was going on through the intersection and was unable to stop, slow or

swerve his car and avoid the collision; that when he was 40 feet from the Fendler car he undertook to apply his brakes, proceeded about 28 feet before the brakes were set and his car then skidded 12 feet to the point of collision.

Under the humanitarian doctrine, defendants owed plaintiff no duty until the automobile in which she was riding came into a position of imminent peril. "The meaning of the term 'imminent peril' as the basic fact of the humanitarian doctrine has been well settled. The peril truly must be imminent—that is, certain, immediate, and impending; it may not be remote, uncertain or contingent. A likelihood or bare possibility of injury is not sufficient . . . ." Blaser v. Coleman, 358 Mo. 157, 213 S. W. 2d 420, 421. The zone of imminent peril would be increased or diminished depending upon whether Mrs. Fendler was oblivious to or aware of the likelihood of being struck by defendants' automobile as she attempted to drive across Independence Street.

Defendants contend that when Mrs. Fendler saw the Boswell car before entering the intersection the Fendler car did not come into a position of peril until it had reached a point beyond which she could not stop it before the collision; and that since there was no evidence of the speed at which she was driving as she crossed the intersection or the distance in which she could extricate her car from its peril, plaintiff's case must fail. In support of this contention, defendants cite: Lotta v. Kansas City Public Service Co., 342 Mo. 743, 117 S. W. 2d 296, 300; Gosney v. May Lumber & Coal Co., 352 Mo. 693, 179 S. W. 2d 51, 53; Yeaman v. Storms, 358 Mo. 774, 217 S. W. 2d 495; Claridge v. Anzolone, 359 Mo. 65, 220 S. W. 2d 33, 35; Bean v. St. Louis Public Service Co., Mo. App., 233 S. W. 2d 782.

Those cases are readily distinguishable on the facts. In each of them the evidence failed to show that defendant could have averted the collision after plaintiff came into a discoverable position of imminent peril. The evidence in this case is quite different.

Mrs. Fendler testified that although she saw defendants' car one-half to three-fourths of a block east of the intersection, yet she assumed she had "plenty of time" to cross and did not realize the proximity of defendants' car until the collision was imminent. Defendant Richard Boswell admitted he saw the Fendler car before it entered the intersection and saw it continuously thereafter.

There was no evidence of the length of the block or whether it was longer or shorter than the ordinary city block. We do know, however, that in ordinary parlance the term "block", when used to express a measurement of distance, means about 300 feet. "It is a matter of common knowledge that in the settlement of the Plains states . . . urban areas were platted generally in squares or blocks of 300 feet on each side, and that, when used as a measurement of distance and nothing appears to the contrary, the commonly ac-

cepted meaning of 'a block' is 300 feet." Gorman v. Dalgas, (Neb.) 36 N. W. 2d 561, 563.

As defendant Richard Boswell approached the intersection it was his duty to exercise the highest degree of care. That duty required him to keep a careful watch ahead and laterally for other vehicles. "He was required to look in such an observant manner as to see what a person in the exercise of the highest degree of care for the safety of himself and others would be expected to see under similar circumstances." Chenoweth v. McBurney, 359 Mo. 890, 224 S. W. 2d 114, 118. "Where one is charged with the duty to look and to look is to see, he must be held to have seen what looking would have revealed." Smith v. Kansas City Public Service Co., 328 Mo. 979, 43 S. W. 2d 548, 553. See also Weis v. Melvin, Mo. Sup., 219 S. W. 2d 310, 311. The jury could reasonably have found that in the exercise of the highest degree of care he could have seen the Fendler car from the same distance Mrs. Fendler saw the Boswell car; that he was more than one hundred feet from the intersection when the Fendler car entered it; and that, had he been attentive to his duty to look, he could have seen Mrs Fendler was engaged in shifting gears and unaware of his proximity. Her car had entered the intersection before he had come dangerously close to it. He did not notice any change in its speed as it crossed and was chargeable with notice that if both cars continued at their present rate of speed a collision was inevitable. He admitted he could have stopped his car within forty feet, but later said he could not do so. Obviously, of course, when traveling at 20 miles per hour, he could have stopped it within 100 feet.

In Prater v. Rausch, 344 Mo. 888, 129 S. W. 2d 910, 911, we quoted with approval from an earlier case: "Plaintiff's car was moving toward the path of defendant's car, and from the evidence the jury may have found that she and her husband were oblivious of the near and dangerous approach of the latter, and that defendant, in the exercise ▇▇▇ of due care, so observed or should have so observed. In such situation, defendant was not authorized to wait until plaintiff's car was immediately in his path before taking steps to avert the impending collision." See also Kasperski v. Rainey, Mo. App., 135 S. W. 2d 11, 15; Teague v. Plaza Express Co., 354 Mo. 582, 190 S. W. 2d 254, 256; Hollister v. A. S. Aloe Co., 348 Mo. 1055, 156 S. W. 2d 606, 608; Buehler v. Festus Mercantile Co., 343 Mo. 139, 119 S. W. 2d 961, 966.

We hold that plaintiff made a submissible case under the humanitarian doctrine.

▇▇▇ The trial court submitted in the disjunctive the issue of whether the Boswell car could have been stopped, slowed or swerved to avoid the collision. Defendants further contend there was no evidence that the collision could have been avoided by swerving the

Boswell car. The evidence above narrated clearly warranted a finding it could. But, in any event, it would be improper under the record in this case to review a trial error in submission of one element of negligence when a submissible case was made upon other elements that were pleaded. Defendant filed no after trial motions, and, therefore, we are precluded from reviewing any error occurring in the trial of the case other than that inherent in every case that comes to an appellate court on appeal, to-wit: whether a submissible case was made. RSMo. § 512.160 (1); Rule 3.23 of this Court; Hughes v. St. Louis Nat. League Baseball Club, 359 Mo. 993, 224 S. W. 2d 989, 990; Nelson v. Kansas City, 360 Mo. 143, 227 S. W. 2d 672, 673.

Somewhat parenthetically, we take this opportunity to correct a recent opinion of Division No. 1 of this Court, dealing with the subject matter discussed in the foregoing paragraph. The case of Schneider v. St. Louis Public Service Co., 238 S. W. 2d 350, l. c. 355, written by the writer of this opinion, placed certain restrictions upon raising the question of submissibility of a case in this court upon appeal. We there held that where certain defendants obtained a new trial upon the ground of error in instructions and from which order plaintiff appealed, they could not, on plaintiff's appeal, obtain a review of an assignment in their motion for a directed judgment or in the alternative for a new trial that no submissible case was made. Upon further consideration of that matter, we are convinced the holding in that case is out of harmony with the purpose and spirit of the Civil Code as stated in the Hughes and Nelson cases, supra, and should not be followed. In so holding, we do not overrule the cases cited in the Schneider case in support of the ruling there made: Bailey v. Interstate Airmotive, 358 Mo. 1121, 219 S. W. 2d 333, 8 A. L. R. 2d 710; Shoush v. Truitt, Mo. App., 235 S. W. 2d 859. Those cases were correctly ruled, but the reasoning therein stated is not applicable to cases reaching the appellate court upon proper appeal.

Defendants finally contend that even if it be held plaintiff made a submissible case, the trial court's order sustaining plaintiff's limited motion for new trial on the issue of damages only constituted an abuse of discretion and an invasion of defendant's fundamental and inherent rights.

Plaintiff, aged 74 years at the time of the collision, was a teacher by profession, and had earned about $500 per year for five years prior to her injuries. She had a hernia and wore a support at that time, but it caused her no trouble. She was able to do housework and had accepted a position as housemother and supervisor at St. Ann's School, for which she was to be paid $150 or $200 per month, dependent upon whether she lived at the school.

Her physician testified that prior to the collision he had treated her for hypertension, diverticulosis of the colon, hypertrophic osteoarthritis of the spine and prolapse of the uterus, but that she was in reasonable health at the time of the accident. Following the accident she was taken to a hospital, suffering from multiple body bruises and possible internal injuries. Her abdomen became enlarged and a strangulated hernia developed as a result of her injuries. An operation ensued and a wire screen nine inches square was placed in her abdomen. Following this operation, thrombophlebitis, a complication ▮▮ of her injuries and the hernia operation, arose, necessitating further surgery. This consisted of ligation or tying off the veins in both legs. Edema and swelling of the legs ensued and this causes pain. An examination made before the trial revealed that the screen placed in her abdomen had become loose and the hernia had returned. It is unlikely that another operation could be successfully performed. Her general health is now good, but she could not teach. Her injuries did permanent damage to health and aggravated her pre-existing infirmities. Her medical and hospital bills amounted to $1455.46. The verdict was for only $1750. The trial court did not abuse the wide discretion allowed it in holding the verdict was inadequate. Steuernagel v. St. Louis Public Service Co., 361 Mo. 1066, 238 S. W. 2d 426, 431.

▮ Did the trial court by its order limiting the trial to the issue of damages alone violate fundamental rights of defendants? By the Civil Code, which became effective January 1, 1945, the General Assembly provided in Section 115, RSMo. § 510.330: "A new trial may be granted for any of the reasons for which new trials have heretofore been granted. A new trial may be granted to all or any of the parties and on all or part of the issues after trial by jury, court or referee . . . ." In so legislating, it gave sanction to what this court in 1926 had said trial courts might do, Busse v. White, Mo. Sup., 287 S. W. 600, 602, and to what this court in 1931 ordered the trial court to do in Barr v. Nafziger Baking Company, 328 Mo. 423, 41 S. W. 2d 559. In Borgstede v. G. H. Wetterau & Sons Grocery Co., (1938) 116 S. W. 2d 179, the St. Louis Court of Appeals reviewed the wisdom and history of the practice and held the trial court did not abuse its discretion in that case in granting plaintiff a new trial solely on the issue of damages. Since the adoption of the Code, two cases have affirmed the action of the trial court in ordering a new trial on the issue of damages alone: Aut v. St. Louis Public Service Co., 238 Mo. App. 1136, 194 S. W. 2d 753; Widener v. St. Louis Public Service Co., 360 Mo. 761, 230 S. W. 2d 698. And, in the case of Spalding v. Robertson, 357 Mo. 37, 206 S. W. 2d 517, 523, this court remanded the cause for retrial of the issue of damages only.

In the case of Gasoline Products Co. v. Champlin Refining Co., (1931) 283 U. S. 494, 51 S. Ct. 513, 75 L. Ed. 1188, the U. S. Supreme Court, in an opinion written by Mr. Justice Stone, held the practice constitutional as against an attack upon the ground it was a denial of the constitutional right to a jury trial. In so holding it was noted that many states had adopted it, and further said: "It [the Constitution] does not prohibit the introduction of new methods for ascertaining what facts are in issue . . . or require that an issue once correctly determined, in accordance with the constitutional command, be tried a second time, even though justice demands that another distinct issue, because erroneously determined, must again be passed on by a jury." This case was followed in May Department Stores Co. v. Bell, 61 F. 2d 830, and Massachusetts Bonding & Insurance Co. v. John R. Thompson Co., 88 F. 2d 825, cert. denied 301 U. S. 707, 57 S. Ct. 941, 81 L. Ed. 1361.

Rule 59 of the Federal Rules of Civil Procedure, 28 U. S. C. A. 269, now provides: "A new trial may be granted to all or any of the parties and on all or part of the issues (1) in an action in which there has been a trial by jury, for any of the reasons for which new trials have heretofore been granted in actions at law in the courts of the United States; . . . ."

Cases cited by defendants from other jurisdictions are not controlling or persuasive. We are obligated to follow the directions of the Civil Code. Furthermore, properly administered, the practice is to be commended. There can be no sound reason for requiring a litigant to submit to the hazards and expense of resubmitting the issue of liability where the issue of damages can be tried anew without prejudice. The trial court did not err in ordering a new trial on the issue of damages only, unless, for some reason appearing upon the record as a whole, a substantial right of defendants was denied.

Defendants assert that (a) the issue of damages is so interwoven with other fact issues they cannot be separated without prejudice to them, and (b) the inadequacy of the verdict shows on its face that it was a compromise or an effort to "give the old lady something from the insurance company." (The jury had been interrogated on voir dire examination as to any interest in defendants' insurer.) In so contending, defendants concede they must rebut the presumption of the correctness of the trial court's ruling; and that is the law. Conner v. Neiswender, 360 Mo. 1074, 232 S. W. 2d 469; Steuernagel v. St. Louis Public Service Co., supra.

(a) Plaintiff gave no testimony as to the cause of the collision. She did not know it was impending. The collision occurred and plaintiff was injured. The question of who was at fault can have no bearing upon the nature, extent, duration or compensatory value of her injuries. Liability or non-liability cannot affect them in any manner.

(b) There is no evidence of misconduct on the part of the jury. Defendants' contention that the inadequacy of the verdict justifies the conclusion it was the result of a compromise is purely conjectural. This identical question was before the St. Louis Court of Appeals in the case of Borgstede v. G. H. Wetterau & Sons Grocery Co., 116 S. W. 2d 179. In that case, a personal injury action, the trial court sustained a verdict on the ground of inadequacy of the verdict and ordered a new trial limited solely to the issue of damages. Defendant there contended, as defendants do here, that the inadequacy of the verdict justified the conclusion it was the result of a compromise. In disposing of that contention, that court held the contention was not justified. In so holding, it quoted with approval from the case of Thompson v. City of Lamar, 322 Mo. 514, 17 S. W. 2d 960, 976, wherein this court, in discussing an allegation that the verdict there under consideration was arrived at by quotient, said: "The sanctity of the jury's deliberations, and the verity and honesty of their verdict, ever since the adoption of our jury system of procedure, has been jealously guarded and maintained by the courts, and properly so, and to overthrow or set aside the verdict of a jury in the absence of convincing, positive, and well-nigh conclusive, evidence of misconduct of the jury in arriving at such verdict, would amount to an unwarranted and unjustifiable invasion by the court of the jury's province . . . ."

The trial court had a better opportunity than this court to determine whether the verdict was the result of compromise. It did not so find and we are not at liberty to hold, upon the basis of conjecture alone, that it abused its discretion.

The order of the trial court is affirmed. All concur.