Rosella BRAUN, Appellant,

v.

Carl HOFFMEISTER, Respondent.

No. 49279.

Supreme Court of Missouri,

Division No. 1.

April 8, 1963.

Jack H. Ross, Coleman, Ross & Cekovsky, Clayton, William L. Mason, Jr., St. Louis, for appellant.

F. X. Cleary, C. M. Kirkham, Moser, Marsalek, Carpenter, Cleary & Jaeckel, St. Louis, for respondent.

HOLLINGSWORTH, Judge.

Plaintiff sought damages in the sum of $25,000 for personal injuries sustained when an automobile in which she was a guest collided with an automobile driven by defendant at the intersection of Sulphur Avenue, a north-south street, and Potomac Street, an east-west street, in the City of St. Louis. Trial of the case to a jury resulted in a verdict for defendant. She appealed from the ensuing judgment, assigning error in Instruction No. 3 given in behalf of defendant.

The collision occurred in a residential section of the city about 10 a. m., on January 7, 1961, a clear, dry day. Plaintiff was riding in the front seat of the automobile owned and operated northward on Sulphur Avenue by William Henry Brown. The automobile with which Mr. Brown's car collided was owned and operated eastward on Potomac Street by defendant. Both streets are 36 feet wide, paved and practically level at the intersection and on each side thereof. No traffic controls are posted at the intersection.

Plaintiff's testimony was that she did not see or sense the impending collision until it occurred.

According to Mr. Brown, aged 76 at trial time, he was driving 15 to 20 miles an hour as he drove northward on Sulphur to the intersection. When his car was 15 or 20 feet south of the intersection, he first saw defendant's car, eastbound on Potomac, then 50 or 75 feet west of the intersection. Mr. Brown "relaxed on the accelerator." But, as he "got a little further up", he noticed that defendant did not seem to be checking his speed, so he "slapped on the brakes" and veered slightly to his right. The left front end of his car came into contact with the right side of defendant's car, at its right front door. Mr. Brown further testified that his car had practically stopped when the collision occurred; that defendant's car was traveling about 35 miles an hour when he first saw it and that it did not noticeably slow prior to the collision.

According to defendant's evidence, he, when one half block west of the intersection, was driving at a speed of about 20 miles an hour, which he reduced to about 15 miles an hour when he was about 10 feet west of the intersection. At that point he looked to his right down Sulphur to see if anyone was coming. He could see south down Sulphur between 60 and 75 feet, saw nothing coming, "stepped on the pedal" and started across the intersection. When he was 3 or 4 feet from the east curbline of Sulphur and 3 or 4 feet from the south curbline of Potomac, "I got banged and that was it." He did not think that he ever looked to his right but the one time before he entered the intersection and that was when he was 10 feet west of it; and he did not see Mr. Brown's car as it came up to or entered the intersection, or during the time that he, defendant, traveled approximately 30 feet into it before his car was struck by the Brown car. On cross-examination, defendant said that before he "arrived at the corner [he] looked both ways" and did not see Mr. Brown coming.

Instruction No. 3, given in behalf of defendant, and of which plaintiff complains, reads as follows:

"The Court instructs the jury that if you believe and find from the evidence

**408**

that as defendant, Carl Hofmeister, drove his automobile eastwardly on Potomac Street and as he neared Sulphur Avenue, he looked in both directions but saw nothing approaching from his right, and if you further believe and find that he *then* continued across the intersection and when close to the east curb of Sulphur Avenue his automobile was struck in the side by an automobile operated by William Henry Brown, and if you further believe and find that the defendant, Carl Hoffmeister, was exercising the highest degree of care in keeping a lookout *then,* and in such event, plaintiff is not entitled to recover and you must find your verdict for the defendant." (Emphasis ours.)

The instruction hypothesizes three basic findings by the jury which, if by the jury found in the affirmative, it was required to return a verdict for defendant:

1. That as defendant *"neared Sulphur Avenue"* he looked in both directions and saw nothing approaching from his right;

2. That he *then* continued across the intersection and was struck by the Brown car near the east curbline of Sulphur; and

3. That he was exercising the highest degree of care in keeping a lookout *then.*

Does the third hypothesized finding refer only to the second hypothesized finding or does it refer to both the second and the first? We are inclined to the view that the jury would understand the instruction as written to declare that if, as defendant neared the intersection, he looked in both directions and saw nothing approaching from the right, the duty of defendant to exercise the highest degree of care in keeping a lookout arose only after he "continued across" the intersection, without having seen the Brown car as he neared the intersection. If the jury reasonably could so interpret the instruction, as we think it could, then it well may have returned a verdict for defendant based upon the mere finding that defendant "looked" in both directions as he neared Sulphur, however casual or nonvigilant that "look" may have been, and saw nothing approaching from his right, and the further finding that defendant thereupon continued across the intersection to the point of collision, only *then* exercising the highest degree of care in keeping a lookout. The true meaning of the instruction, as phrased, is calculated (without design, of course) to be confusing even to a person with legal experience; certainly, it could be misleading to a lay jury.

Consideration of another phase of the instruction shows it to be clearly erroneous. By hypothesizing a finding that, as defendant *"neared* Sulphur Avenue, he looked in both directions but saw nothing approaching from his right", the instruction made defendant's conduct and the extent and result of his having "looked in both directions" and having seen "nothing approaching from his right" the standard of care required of motorists, irrespective of whether, in the exercise of the highest degree of care, he *could and should have seen* the approaching Brown car before entering the intersection in dangerous proximity to it.

The degree of care of a motorist upon the highway, as required by statute, § 304.010 RSMo 1959, V.A.M.S., imposes upon the operator of motor vehicles upon the streets and highways of this state the *continuous* duty to exercise the highest degree of care at all times and all places thereon to keep a lookout for persons thereon and in every other respect. Mayfield v. Kansas City Southern Ry. Co., 337 Mo. 79, 85 S.W.2d 116, 123–124[11–16]; Faught v. Washam, 365 Mo. 1021, 291 S.W. 2d 78, 82[4]. To fulfill that duty, the motorist is required to look in such an observant manner as to enable him to see what a person in the highest degree of care for the safety of himself and others would be expected to see under similar circumstances. Chenoweth v. McBurney, 359 Mo. 890, 224 S.W.2d 114, 118[8]. " 'Where one is charged with the duty to look and to look is

to see, he must be held to have seen what looking would have revealed.'" Lilly v. Boswell, 362 Mo. 444, 242 S.W.2d 73, 76 [5–6]; Witt v. Peterson, Mo., 310 S.W.2d 857, 860[1–4]. There is nothing in the record to show that had defendant, in the exercise of the highest degree of care, continued at a speed of 15 miles an hour, which he was traveling when 10 feet west of the intersection, at which point he took his first and only look to the right, and thereafter again looked to his right immediately before or at the time of entering the intersection, he, in the exercise of the highest degree of care, could not have seen the Brown car in time to have avoided the collision. Yet, instruction No. 3 absolved defendant of negligence if he looked only once to the right as he "neared" the intersection; it failed to advise the jury that the highest degree of care required defendant not only to keep a lookout ahead and laterally for automobiles with which he might come into collision, but also to see and avoid collision with any automobile which, in the exercise of highest degree of care, he could have seen and avoided. It should also be here noted that the phrase "highest degree of care", as used in the statute, was not defined in any instruction given the jury.

Defendant's contention is that instruction No. 3 must be read in connection with all other instructions and particularly plaintiff's instruction No. 1, of which (defendant contends) instruction No. 3 is an affirmative converse; and that as a whole charge, the instructions are harmonious, clear and complete and do not constitute an erroneous charge.

Instruction No. 1, in material part as herein emphasized, reads: "* * * and if you further find that the defendant *by the exercise of the highest degree of care* in keeping a lookout ahead and to his right for northbound traffic on Sulphur Avenue *could have discovered the automobile in which plaintiff was riding in time thereafter, by the exercise of the highest degree of care, to have avoided the collision described in evidence;* if you so find, and if you further find that the defendant failed to keep such a lookout and that in so failing the defendant did not exercise the highest degree of care and was guilty of negligence, if you so find; and if you further find that such negligence directly and proximately caused said collision and injury to plaintiff then your verdict should be in favor of the plaintiff, * * *." The portion of instruction No. 1 above emphasized not only points up the erroneous and misleading phrasing of instruction No. 3, it sets forth an essential element of the exercise of the degree of care required of a motorist, thereby revealing one basic aspect wherein instruction No. 3 falls short of being a true converse of instruction No. 1. Thus instruction No. 3 is in irreconcilable conflict with plaintiff's unchallenged instruction No. 1.

Our conclusion is that instruction No. 3 was prejudicially erroneous.

The judgment is reversed and the cause remanded.

All the Judges of the Division and STONE, Special Judge, concur.