ROBERTSON BROTHERS, Respondents, v. WINS-
LOW BROTHERS, Appellants.

Kansas City Court of Appeals, April 27, 1903.

Landlord and Tenant: SURRENDER: EVIDENCE. A surrender is the yielding up of the estate to the landlord so that the leasehold interest becomes extinct by mutual agreement of the parties, and can be accomplished by express words or by operation of law based on acts which imply an agreement, and the evidence in the record discloses every element required to constitute a surrender by operation of law if not by express words.

Appeal from Jackson Circuit Court. — *Hon. L. H. Waters*, Special Judge.

REVERSED.

*Frank P. Sebree* and *Edward P. Gates* for appellants.

The question in this case to which we wish to call the attention of the court is that there is an entire failure of proof on behalf of plaintiffs not only as to the two causes of action stated in the petition on which the cause was tried, namely, that plaintiffs were entitled to one-half of a bonus of $4,000 which was alleged to have been paid to the defendants for the firm of Winslow Brothers and Robertson Brothers to move down to the stock-yards, and also to one-half of the value of the leases given by the Stock Yards Horse & Mule Company to the defendants on November 27, 1900, and on which two causes of action the court found that plaintiffs failed to make out a case and so decided; but also on the issue presented by the defendant's appeal to this court, namely, the right of plaintiffs to recover for one-half of the value of the lease ending September 1, 1901, on the Grand avenue property, for which the circuit court gave judgment for plaintiffs for $630 and from which judgment defendants appeal to this court.

*Hamner & Hamner* for respondents.

Submitted an argument on the evidence.

SMITH, P. J.—Plaintiffs were a firm engaged in the business of trading in horses and mules under the name of Robertson Brothers, and the defendants were likewise a firm engaged in the same business under the name of Winslow Brothers. On September 1, 1898, the said firms entered into a co-partnership under the name of Winslow Brothers & Robertson Brothers for the purpose of engaging in the horse and mule trade. At the time said two firms entered into said co-partnership, the former Winslow Brothers held a five years' lease—three years of which was unexpired—on certain lots on Grand avenue, Kansas City, where they were carrying on their firm business at the time of the formation of the partnership with the Robertson Brothers. The improvements, consisting of a large barn, etc., had

been erected at the expense of the lessees.   It is proper
to add that the lease contained a provision for a renewal
at its expiration by the lessees for a further term of
five years.   The contract of co-partnership between the
two firms contained, amongst others, the following pro-
visions:    (1) that the life of the co-partnership was to
be three years from September 1, 1898; (2) that the lots
hereinbefore referred to, with the improvements there-
on, were to be used for carrying on the business of the
consolidated partnerships, and for the use of such prop-
erty the latter was to pay said Winslow Brothers a
rental in monthly installments not exceeding $1,500 nor
less than $1,320 per annum, the exact amount to be
agreed upon by the parties at the end of the first year;
(3) that Winslow Brothers were at any time during the
first year of the existence of said consolidated co-part-
nership, if requested by Robertson Brothers, to sell and
convey to them an undivided one-half interest in said
barn and the improvements therein for not less than
$3,000, or one-half of the cost of such improvements.
No such request was ever made.

During the latter part of the second year of the
existence of the consolidation most of the firms engaged
in the horse and mule trade on Grand avenue removed
to street adjacent to the Kansas City Stock Yards, so
that most of that trade centered there.   The members
of the consolidation seeing this, begun to discuss the
propriety of also removing.   The Winslow Brothers
were willing to remove if they could dispose of their
leasehold property then occupied by the consolidation.
With this view, several conferences were held by the
members of the consolidation with the officers of the
Stock Yards Horse and Mule Company—a corporation.
The result of all which was that the horse and mule
company, for the consideration of seven thousand dol-
lars, purchased of the Winslow Brothers their lease-
hold on Grand avenue and agreed to erect or cause to
be erected in the vicinity of the stock yards a suitable

barn for the use of the firm and on which such latter
was to take a ten years' lease at a monthly rental of
$158. The removal was with the approval of all the
members of the consolidated partnerships. The monthly
rent which the Winslow Brothers had agreed to pay
the horse and mule company for the use of the new
barn also had their approval.

After the assignment by Winslow Brothers of their
Grand avenue lease and the execution of the ten years'
lease on the new barn to them, the two firms entered
into a supplemental contract to the effect that the said
co-partnership theretofore entered into should continue
until September 1, 1901, and that Winslow Brothers
rent to the said consolidation the stable and offices then
occupied by the latter until September 1, 1901, at the
same price that the Stock Yards Horse and Mule Com-
pany charged the former.

After the consolidated co-partnership had become
dissolved under the terms of the contract the Robertson
Brothers claimed (1) one-half of the $7,000 received by
Winslow Brothers of the horse and mule company on
account of the sale of the Grand avenue lease; (2) one-
half of the value of the ten years' lease of the horse and
mule company to Winslow Brothers in the new barn.
The Robertson Brothers shortly after the dissolution of
the consolidated partnership brought this suit in equity
against the Winslow Brothers, the object of which was
to obtain a decree for an accounting between the two
partnerships and for the payment to them of the one-
half of said alleged $4,000 bonus, and also of one-half
of the value of the said ten years' lease, etc.

The cause was heard by the court which resulted in
a finding and decree adversely to the Robertson Broth-
ers on their claim to one-half of the alleged $4,000 bonus,
as well as to that for one-half of the ten years' lease,
but it found that Winslow Brothers sold their lease on
the Grand avenue property for one hundred and fifteen
dollars per month more than said consolidated partner-

ships were to pay therefor, and had appropriated the same to their own use, and that the Robertson Brothers were entitled to one-half of that amount, which was $630, and so decreed accordingly. The defendants appealed from this decree.

It is difficult to see how the court under the evidence could have found and decreed otherwise than it did as to the claim made by Robertson Brothers in respect to the ownership of one-half of the value of the ten years' lease on the new barn, and it is equally as difficult to see why a similar finding and decree was not made as to the claim for any part of the proceeds arising from the sale of the Grand avenue lease. It will be remembered that Winslow Brothers, by the terms of the consolidated co-partnership contract, leased the Grand avenue property to the consolidation for and during the three years it was to continue, at a rental of $150 per month, and that the latter used said property and paid the stipulated monthly rent until it removed to the barn erected by the horse and mule company. The abandonment of the use and occupancy of the Grand avenue property and the substitution by the consolidation in its stead of the property of the horse and mule company as a place in which to carry on its business was done with the consent of not only the two firms but with that of the consolidation as well. Every party to the consolidated co-partnership contract yielded his unqualified assent to the arrangement whereby the change was accomplished. The consolidated co-partnership consented to give up the use of the Grand avenue property and to rent of Winslow Brothers the property leased of the horse and mule company and to occupy the latter property in place of the former.

The law is quite well settled that a surrender is the yielding up of the estate to the landlord so that the leasehold interest becomes extinct by mutual agreement between the parties. It is either in express words by which the lessee manifests his intention of yielding up

his interest in the premises, or by operation of law where the parties without express surrender do some act which implies that they have both agreed to consider the surrender made. Huling v. Roll, 43 Mo. App. 234; Buck v. Lewis, 46 Mo. App. 231; Churchill v. Lammers, 60 Mo. App. 244. The evidence preserved in the record discloses the presence of every element required by the authorities just cited to constitute a surrender by operation of law, if not by express words. The surrender by the consolidation of the Grand avenue property was clearly established by the evidence, and after that took place it had no longer any right or interest in the leasehold held by the lessors, the Winslow Brothers, in that property. Whatever right or interest the consolidation acquired in that lease under the consolidated co-partnership contract was eliminated and ended by the surrender. It is true the consolidated co-partnership was required to pay more rent for the new location than for the old, but all the partners were induced to consent to this in consideration of the increased business which they believed and were assured could be done by it at the latter location. When the consolidated partnerships consented to the surrender of the Grand avenue location and to remove to the new, its situation as respects the former was if it had never had any right or interest therein. The lease on the old thereafter became the exclusive property of the Winslow Brothers, and their right to dispose of it was a matter in which the consolidation had not the slightest concern and without which, of course, the claim of Robertson Brothers could have no foundation.

It follows from these considerations that the judgment must be reversed. All concur.