ST. LOUIS, KANSAS CITY AND SPRINGFIELD

# COURTS OF APPEALS

AT THE

OCTOBER TERM, 1911.

---

(Continued from Volume 159)

---

## J. H. GALLOP, Appellant, v. JAMES MURPHY et al., Respondents.

Springfield Court of Appeals, December 4, 1911.

1. **PARTNERSHIP: Mining Lease: Surrender: Fraud: Statute of Limitations.** In 1895, M, the owner of mining land, executed a mining lease to several parties, including himself, for a term of ten years. Afterwards M's brother, one of the lessees, acquired a half interest in the land. Immediately after the delivery of the lease the parties thereto entered upon and mined the land in accordance with its terms. Subsequently, but in the same year, the plaintiff acquired a one-sixth interest in the lease and he with the others carried on mining operations until 1899, when he ceased to have anything more to do with the lease and signed a release of his interest to M and his brother, the land owners. In 1910 plaintiff filed this suit against the brother and the heirs of M, for a partnership accounting and claims that the release of his interest in the lease had been obtained by fraud. The evidence is examined and held to show that under the terms of the lease plaintiff had a right to surrender the same at any time; that he failed to prove that the release was procured by fraud and that his bill was properly dismissed.

2. **LEASE: Surrender: Consideration for Surrender.** Where, under the terms of a mining lease, the lessees have a right to surrender the lease or abandon the premises at any time, the lessor have no recourse against the lessees for such

Gallop v. Murphy et al.

abandonment and surrender and no new consideration is necessary therefor.

3. ———: ———: **Surrender by Operation of Law.** A surrender of a lease by operation of law takes place when by consent of both parties another becomes a tenant of the premises and the landlord collects the rent from him.

Appeal from Jasper Circuit Court.—*Hon. D. E. Blair,* Judge.

AFFIRMED.

*C. V. Buckley* for appellant.

(1) In general a release must either be under the seal of the relator or be supported by a sufficient consideration, otherwise in *nudum pactum* and void. 34 Cyc. 1048. (2) In this State it can be shown that a written instrument was not supported by a valuable consideration. Winter v. Railroad, 160 Mo. 181, R. S. 1899, sec. 645. (3) Whenever a specialty or other written contract for the payment of money or the delivery of property or for the performance of a duty, shall be the foundation of an action or defense in whole or in part, or shall be given in evidence in any court without being pleaded, the proper party may prove the want or failure of the consideration, in whole or in part, of such specialty or other written contract. R. S. 1899, sec. 2090; R. S. 1899, sec. 645; McCormack v. St. Louis, 166 Mo. 315; Harrison v. Iron Works Co., 96 Mo. App. 348. (4) In order to an estoppel, defendant must have been induced to act by the release, must have been ignorant of the facts. Bales v. Perry, 51 Mo. 452. (5) In estoppel these elements must co-exist, to-wit: first, ignorance of the facts by the party invoking the estoppel; second, knowledge of the material facts by the party sought to be estopped; third, the facts constituting an estoppel must be the procuring cause of the other

party's action, and fourth, it must injure him if estoppel is not enforced. Spurlock v. Sproule, 72 Mo. 509; Acton v. Dooley, 74 Mo. 67; Burke v. Adams, 80 Mo. 513; Rogers v. Barsh, 73 Mo. 70; Etilgorge v. Assn., 97 Mo. 272. (6) There is no estoppel by silence or inaction alone. The plaintiff must have done something that occasioned the defendant's action. Smith v. Roach, 59 Mo. App. 115; Spurlock v. Sproule, 72 Mo. 563; Olden v. Hendrick, 100 Mo. 533; Wumser v. Frederick, 62 Mo. App. 634. (7) One can acquire no right by fraud. When respondents got appellant to surrender by virture of the false representation that they had forfeited the lease, the release of his interest in the lease was void. Kehoe v. Taylor, 31 Mo. App. 588; Clarkson v. Creeley, 40 Mo. 114; Keiser v. Gammon, 95 Mo. 217. (8) The Statute of Limitations did not begin to run in this case until June 5, 1905. Beller v. Murphy, 139 Mo. App. 663.

*Sapp & Wilson* and *Spencer, Grayston & Spencer* for respondents.

(1) That the five-year Statute of Limitations applies to this case is conceded in the opinion of the court in the Steinbach case, 143 Mo. App. 537, and the Beller case, 139 Mo. App. 663, and is abundantly supported by the authorities. R. S. 1909, sec. 1889; Thomas v. Hurst, 73 Fed. 372; Bonney v. Stoughton, 122 Ill. 536, 13 N. E. 833. (2) This section is applicable to all civil actions, whether at law or in equity. Rogers v. Brown, 61 Mo. 187; Kelly v. Hurt, 74 Mo. 561; Bank v. Bank, 107 Mo. 133; Kline v. Vogel, 90 Mo. 239; Hoester v. Samelmann, 101 Mo. 619; Smith v. Settle, 128 Mo. App. 379 Hudson v. Cahoon, 193 Mo. 547 Loomis v. Railroad, 165 Mo. 469; Goodson v. Goodson, 140 Mo. 206, 25 Cyc. 1060, 30 Cyc. 718. (3) With all due respect for this court, we insist that in the Steinbach and Beller cases, when the Murphys ousted

the plaintiffs, and openly and notoriously denied their rights and held the property adversely to them, the Statute of Limitations began to run, and if this situation continued for the statutory period, the rights of the plaintiffs ended. 2 Lindley on Partnership, 510; 2 Bates on Partnership, sec. 942; Jenny v. Perkins, 17 Mich. 28; Bonney v. Stoughton, 122 Ill. 536, 13 N. E. 833; Currier v. Studley, 159 Mass. 17, 33 N. E. 709; 30 Cyc. 720; Bluntzer v. Hirsch, 32 Tex. App. 585, 75 S. W. 326; Allen v. Woonsocket Co., 11 R. L. 288; Murray v. Penny, 108 N. C. 324, 12 S. E. 957; Coudrey v. Gilliam, 60 Mo. 86. (4) A partner who ousts his fellows and denies their rights is at most a constructive or implied trustee. With the ouster the right of action against him accrues and the statute commences to run. Smith v. Ricords, 52 Mo. 581; Ricords v. Watkins, 56 Mo. 553; Nougues v. Newlands, 118 Cal. 102, 50 Pac. 386; Pierson v. McCurdy, 100 N. Y. 608, 2 N. E. 615; Oaks v. West, 64 S. W. (Tex.) 1033; Merrill v. Monticello, 66 Fed. 165, 72 Fed. 462. (5) The statute runs in favor of the trustee from the time he disowns the obligation of the trust and sets up a claim in his own right to the trust property. Otto v. Schlapkahl, 57 Iowa 226, 10 N. W. 651; Murphy v. Murphy, 80 Iowa 740, 45 N. W. 914.

GRAY, J.—An action for partnership accounting. The plaintiff's petition was dismissed and he appealed. While this controversy is a part of the partnership matters considered by this court in Beller v. Murphy, 139 Mo. App. 663, 123 S. W. 1029, and Steinbach v. Murphy, 143 Mo. App. 537, 128 S. W. 207, the issues in this case are entirely different.

June 5, 1895, Patrick Murphy delivered a mining lease on land in Kansas to several parties, including himself, for a term of ten years. Thereafter James Murphy, one of the lessees and a brother of Patrick, acquired a one-half interest in the fee. Immediately

after the delivery of the lease the parties thereto entred upon and mined the land in accordance with its terms and provisions. They worked during the summer season, but by mutual consent, suspended during the winter. On the 12th day of September 1895, the plaintiff acquired a one-sixth interest in the lease from one of the original lessees, and from that time, he, with the others, carried on mining operations until 1899, at which time he ceased to have anything to do with the lease, and his first claim of any interest therein since that date was made when this suit was filed, March 1, 1910.

Patrick Murphy died on or about the 12th day of October, 1900, and this suit was commenced against his heirs and legatees and James Murphy. The answer of the defendants consisted of a general denial, special pleas of the five and ten years' Statutes of Limitations, and that plaintiff in 1899 executed to James and Patrick Murphy his written surrender of all his rights and interest in the lease and premises, and that the Murphys, relying and acting thereon, took possession of the premises and executed a new mining lease thereon to others, and thereafter carried on mining operations with and through such other persons; that the plaintiff never since said date claimed or asserted any right or interest in said leasehold, and afterwards permitted suits to be brought and prosecuted by other persons claiming an interest in said leasehold, and permitted in such suits an accounting to be had between these defendants and said other persons, and at all such times the plaintiff admitted that he had no interest in said premises, and asserted no right thereto.

The reply denied the new matter contained in the answer, and in regard to the defense of surrender, alleged the following: "Further replying plaintiff says that he did not execute any release in writing of his interest in the lease mentioned in his petition.

And that said release was without consideration and therefore void, and plaintiff further says that the release pleaded by the defendants was obtained from him by false and fraudulent representations of the defendants that they had forfeited said lease on all the parties interested therein; that they were all out; that said parties had nothing further to do with said lease or no further interest therein; that plaintiff executed said release relying on the truth of said statements of defendants; that said statements of defendants were false and untrue and known to be untrue and they were made for the purpose of cheating the plaintiff out of his valuable interest in said lease.''

The evidence shows that in the original lease, the tenants were to pay a rent or royalty of ten per cent of the value of the ore mined on the lands; that after the execution of the surrender by plaintiff, the Murphys made a new lease to other persons, and by the terms of which a rent or royalty of twenty per cent was reserved.

The plaintiff's theory is that the surrender was obtained without consideration, and by fraud, and on account thereof, was void, and as an owner of an undivided one-sixth interest in the original lease and as a partner with the others named in that lease, he is entitled to recover one-sixth of the extra ten per cent royalty which accrued to the co-partnership by means of the new lease.

In the cases of Beller and Steinbach against these defendants, the plaintiffs were permitted to recover on the theory that attempted forfeitures of their interests by the Murphys were void, and, therefore, the lease remained in full force for the term of ten years, for which it was given. In this case, however, the plaintiff does not rely on an attempt to forfeit, but solely on the ground that his surrender was without consideration and was procured by false and fraudulent representations of the defendants. The surren-

der was admitted, and therefore, the burden was upon the plaintiff to show that the same was without consideration, or that it was procured by fraud.

The terms of the original lease are important in considering the question of failure of consideration. While by the terms of that lease, the lessees had the right and privilege to mine the premises for a period of ten years, they were not compelled to do so. In an ordinary lease of a building the lessee agrees to keep the premises for a certain time and to pay the rent thereon during that period, but in this lease the only consideration to the lessor was the prospective royalties to arise from exploration and developments of the mine. The lessees had the right to surrender the lease or abandon the premises at any time, and the lessor would have had no recourse against them for so doing; and therefore, when the plaintiff executed the surrender, he was only doing something that he was authorized to do by the terms of the original lease, and no new consideration was necessary.

On the issue that the surrender was obtained by fraud, the plaintiff testified as follows: "I came back in the spring of 1899 to go to work on the lease. A few mornings afterwards I met Mr. Howard Murphy on the street, and I said to him, 'I guess we are all out, I have no use for these papers, just as well return them to you if we are all out and not going to do anything more,' he asked me then if I had signed a release. I forget just the words I said but I remarked that I didn't wish to hold anything against the land and I would. He asked me to go to Mr. Moore's office, I told him I was going home that night if he wasn't going to do anything more, and he asked me to go to Mr. Moore's office and sign the release. I said to him, if we are all out and couldn't do anything more on the lease it was forfeited and I had no use further for the drill records, and brought them down expecting to use them. Very little passed between us on the

street. I told him if we were out I don't want to hold anything against your property, and I went and signed the surrender of my rights.''

At the time of the surrender Patrick Murphy and James Murphy, the owners of the land, were both living, and the record is silent as to anything said by either of them to the plaintiff relating to the lease or the surrender thereof. Howard Murphy is a son of Patrick Murphy, but he had no interest in the lease, and the testimony of the plaintiff does not show that even Howard said anything to him that caused him to execute the surrender. The plaintiff's own testimony shows that in the conversation with Howard Murphy he did nearly all the talking, and that all that Mr. Murphy did was to ask him to go to Moore's office and sign the release after he had told him that he did not want to hold anything against the land.

The facts disclosed a surrender by operation of law. Such a surrender takes place when by consent of both parties another becomes a tenant of the premises and the landlord collects rent from him. [Huling v. Roll, 43 Mo. App. 234; Buck v. Lewis, 46 Mo. App. 227; Robertson Bros. v. Winslow Bros., 99 Mo. App. 546, 74 S. W. 442.]

When it is conceded, as it must be, that by the terms of the original lease the plaintiff was not required to keep the leased premises for the full term of the lease, but had the right to surrender the same, and when it is conceded, as it must be, that by the above testimony, the plaintiff entirely failed to prove that the surrender was procured by fraud, then it is apparent that plaintiff was not entitled to recover, and that the trial court was right in dismissing his bill. It was almost eleven years from the time he executed the surrender until he brought this suit. A short time after the execution thereof the Murphys leased the land to other tenants, who mined the same for a period of ten years before this suit was instituted, and when plain-

tiff failed to prove that the surrender was procured by fraud, no equity remained in his case, and the judgment of the chancellor dismissing his bill will be affirmed. All concur.