# MARCH, 1926.

D. A. SCHULTE, INCORPORATED, RESPONDENT, v. SEG HAAS, APPELLANT.

Kansas City Court of Appeals.   July 6, 1926.

*Ringolsky, Friedman & Boatwright* for appellant.

*Cooper & Neel* and *W. E. Kemp* for respondent.

BLAND, J.—This is a suit for rent. There was a verdict and judgment in favor of plaintiff in the sum of $1838.75 and defendant has appealed.

The facts show that on April 21, 1922, plaintiff leased in writing to defendant a certain store room in a building located at the northeast corner of Tenth and Main streets in Kansas City, Missouri, for a term beginning on May 15, 1922, and ending on January 31, 1925. The stipulated rental was $550 per month. Among other things the lease provides—

"In event of the non-payment of rent or the failure of the lessee to carry out any other obligations of this lease, then after giving the lessee five (5) days' notice of forfeiture in writing specifying such default and if the lessee shall then still continue in default for three (3) days the lessor shall have the right to re-enter and retake said premises and, on obtaining possession, relet the same at its own will to any person or persons, for any amount, and the lessee shall continue liable for any deficiency of rentals or other default hereunder and all expenses incurred by the lessor."

The lease also contains the following:

"Provided always, that these presents are upon the condition that in case of a breach by the lessee, or those claiming under him, of any of the covenants and agreements in this lease contained to be complied with and performed by the lessee, or those claiming under the lessee, or in case the estate hereby created should be taken from the lessee by process of law, or if the lessee go into bankruptcy, voluntarily or involuntarily, or if a receiver is appointed for the lessee's business, or if the lessee becomes insolvent, the lessor may, at its election, while default or neglect continues, or any time after the commencement of such proceedings at law or in equity, without notice or demand, enter upon the demised premises and thereby terminate the estate hereby created; and this lease shall thereupon become forfeited, null and void; but for this cause the lessee's obligation to pay shall not cease;"

After the execution of the lease defendant entered into possession of the premises and paid the rent to July 1, 1922, but on June 25, 1922, without any previous notice, vacated and abandoned the prem-

ises and on the next day left the keys thereto at the office of plaintiff's agent in Kansas City. Accompanying the keys defendant left with plaintiff's agent a letter addressed to the latter, giving its reasons for vacating and abandoning the premises and stating that he no longer recognized any tenancy as existing and suggesting that plaintiff could lease the premises for as much or more than the rent paid by defendant "and thus save yourself from any loss."

Immediately upon receipt of the keys and letter from defendant the agent notified plaintiff, whose offices were in New York City, by wire and letter of defendant's action and notified plaintiff that the Baltimore Shirt Company had offered to rent the premises at $400 per month and advised that the shirt company's proposition be accepted. On July 1 plaintiff's agent acting on its behalf wrote defendant acknowledging receipt of his letter of June 26 and advising him that plaintiff had instructed it to attempt to secure another tenant for the premises at the earliest possible date and at the best rental that could be secured and if there should be any loss in rent accruing under the unexpired term of defendant's lease, plaintiff would expect defendant to account for the same.

Negotiations were carried on by the agent with the Baltimore Shirt Company, culminating in the signing of a lease for the premises by the latter on July 1, 1922, dated at that time. The lease provided a rental of $400 per month and ten per cent of the shirt company's sales above $4,000 per month, the term to expire at the same date as defendant's term under his lease. The agent who negotiated the lease with the shirt company had no authority to execute a lease on behalf of plaintiff, so the lease was drawn up and signed by the shirt company on July 1st and then forwarded to the plaintiff in New York City for execution, but was not delivered to the shirt company until July 15th. On July 10th, 1922, plaintiff's agent again wrote defendant advising him that a lease was being made with the Baltimore Shirt Company for the property at a guaranteed rental of $400 per month and in addition thereto ten per cent of all sales of the shirt company above $4,000 per month, and that "when we have received a report for the month of July we shall arrange to bill you for the deficiency, if any." The shirt company entered into possession of the premises and plaintiff collected the rent from it under the lease to it and each month thereafter until this suit was brought sent a statement to the defendant for the rent due under defendant's lease, after first allowing a credit for the amount that was collected from the shirt company. All of these statements were ignored by the defendant.

On January 4, 1924, without the knowledge of the defendant, and, of course, without his consent, plaintiff leased to the shirt company the same premises together with two additional store rooms adjacent

to the premises for a term expiring February 1, 1928. The rent reserved under this lease was $600 per month and ten per cent of the aggregate business done by the shirt company in excess of $72,000 per year. The evidence shows that the rental value of the two additional store rooms included in the second lease to the shirt company was at least $200 per month and that they were charged at that rental value in arriving at the rental in the second lease of $600 for the three rooms. Plaintiff continued to allow $400 per month as rental received on the premises originally leased to the defendant and sought to recover from the defendant the difference between the rental stipulated in defendant's lease and said amount for the balance of defendant's term.

It is insisted that the court erred in failing to sustain defendant's demurrer to the evidence. In this connection it is claimed that the action of plaintiff in taking possession of the premises, under the circumstances shown in the evidence, amounted to a surrender of defendant's lease as a matter of law. In addition to this it is contended that the possession of the premises was taken by the plaintiff under the second provision of the lease quoted supra, providing that plaintiff in case of a breach of the lease might, at its election, enter upon the demised premises and thereby terminate the estate created and thereupon the lease should become forfeited, null and void, and defendant says that owing to the fact that plaintiff did enter upon the premises and did take possession of the same and relet it, thereby forfeiting the lease and causing it to become null and void, the relation of landlord and tenant ended and there can be no recovery of further rent under the lease; that the second leasing of the premises to the shirt company for a period extending beyond the expiration of defendant's lease operated as a matter of law as an acceptance by plaintiff of the surrender of the premises by defendant, and defendant was relieved of all further liability, at least after the execution of the second lease to the shirt company, and that the court erred in giving an instruction for plaintiff and refusing an instruction for the defendant which action by the court ignored this effect of the said second lease.

There is no question but that a surrender of a lease in the absence of an agreement to the contrary, operates as an extinguishment of further liability under it, but such a surrender must have the consent of both the landlord and tenant. A surrender occurs either by express agreement of the parties or by operation of law. It occurs by operation of law by reason of certain acts of the parties indicating the assent of the landlord to accept the surrender. [Sander v. Holstein Commission Co., 121 Mo. App. 293, 298; 35 C. J. 1090.] Before there can be a surrender by operation of law there must be a taking possession of the premises by the landlord with the intent of releas-

ing the tenant from further payment of the rent. [Leggett v. Exposition Co., 157 Mo. App. 108, 119.] Whether there has been a surrender by operation of law is a matter of intention of the parties to be arrived at from their conduct and is usually a question of fact for the jury. [35 C. J. 1094; Livermore & Cooley v. Eddy's Administrator, 33 Mo. 547; Sander v. Commission Co., supra; Sessinghaus v. Knocke, 127 Mo. App. 300; Huling v. Roll, 43 Mo. App. 234, 238, 239.] However, where the conduct of the parties necessarily implies a surrender of the lease, the matter becomes a question of law .for the court. For instance, where by consent of both parties another becomes a tenant of the premises and the landlord collects the same amount of rent from the new tenant for which the other tenant is bound. [Buck v. Lewis, 46 Mo. App. 227.] Another instance of a surrender by operation of law as a matter of law will be found in the case of St. Louis Billposting Co. v. Stanton, 172 Mo. App. 40.

As to what facts will show a surrender of the premises as a matter of law, the authorities are in conflict. The weight of the authority in this country however is to the effect that—

". . . upon the abandonment of the premises by a tenant the landlord may refuse to accept a surrender, and after notice to the lessee of his intention to do so, relet the premises for the best rent obtainable, and recover the difference between the rent reserved in the lease and the rent received from the subsequent tenant." [16 R. C. L., p. 972.] [See also Gerhart Realty Co. v. Brecht, 109 Mo. App. 25; Sander v. Commission Co., supra, 1. c. 298; Sessinghaus v. Knocke, supra, 1. c. 303; Buck v. Lewis, supra, 1. c. 232.] There is authority holding that notice to the lessee under the circumstances is not necessary. [Hoke v. Williamson, 98 Kans. 580.] The fact that the landlord enters into a new lease, after the abandonment of the premises by the tenant, for a period extending beyond the expiration of the old lease is not conclusive as to the question of the intention of the parties but is a matter to be submitted for the consideration of the jury along with the other facts.

The law that we have been discussing is that applicable in the absence of any express provisions of the lease governing the matter. But in the case at bar the provision of the lease first quoted, supra, expressly provides for the reletting of the premises in the event of the non-payment of the rent or failure of the lessee to carry out the obligations of the lease and provides that in case of such reletting the lessee "shall continue liable for any deficiency of rentals" etc. Defendant insists that plaintiff did not act under this provision of the lease but rather under the other provision that we have quoted from. In this connection our attention is called to the fact that plaintiff did not give five days' notice of forfeiture in writing and wait three additional days before reletting the premises as provided by the first

quoted clause of the lease; but that the lease to the shirt company was made five days after the delivery of the keys to plaintiff. It seems that the lease to the shirt company was not consummated until twenty days after the abandonment of the premises to the plaintiff, for the reason that it was not until that time that it was signed and delivered to the defendant. However, the matter of giving written notice was waived by the defendant. In his letter that he left with plaintiff's agent on June 26 when he delivered the keys he suggested that the premises be relet; he also stated that he had abandoned the premises and considered the lease at an end. Under such circumstances there was no object in plaintiff's giving defendant five days' notice in writing of forfeiture as provided in the lease, before reletting the premises. It would seem that plaintiff was operating under the provision of the lease first quoted, for the reason that it relet the premises to another and its conduct showed that it considered the defendant liable for the deficiencies in the rental. Whether it was the intention of plaintiff to accept a surrender of its lease under the circumstances disclosed in the evidence was submitted to the jury in plaintiff's instructions.

It is suggested in defendant's reply brief that the first quoted portion of the lease is not to be found in the bill of exceptions. Defendant did not print this part of the lease in his abstract but the same is brought here by an additional abstract by the respondent. If defendant desired to question the additional abstract, he should have proceeded as provided in section 1479, Revised Statutes 1919, and not having done so, we must take respondent's abstract as true. [Elevator & Mfg. Co. v. Mertz & Hale 107 Mo. App. 28; Patterson v. Gallimore, 79 Mo. App. 457.]

It is insisted that plaintiff's instruction No. 5 is erroneous. This instruction told the jury, among other things, that in determining the amount of damages they should find what portion of the stipulated rental of $600 per month in the second lease with the shirt company was paid as rent for the premises described in defendant's lease. It is insisted that the rental in the second lease with the shirt company was not $600 per month but $600 per month plus ten per cent of the gross business of the shirt company in excess of $72,000 per annum. However, there is no evidence that anything more than $600 per month accrued or was collected and there was ample evidence from which the jury could apportion the rental between the premises let to the defendant and the other store rooms leased to the shirt company.

It is last insisted that—

"The court erred in making improper and prejudicial remarks to the counsel for defendant in the presence of the jury and in unnecessarily criticizing said counsel in the presence of the jury, all of which

had a tendency to prejudice and inflame the jury against the defendant.''

An examination of the record discloses that there were but two exceptions preserved during the argument of defendant's counsel referred to. These exceptions were taken to the action of the court in sustaining plaintiff's objection to certain arguments made by defendant's counsel. There was at no time any exception taken to the remarks of the court. therefore, nothing is preserved for review in this respect. [Wooldridge v. Hopkins, 278 S. W. 1081; State v. Ridge, 274 S. W. 496.]

The judgment is affirmed. *Arnold, J.,* concurs; *Trimble, P. J.,* absent.