**AGERS et al.  v.  COURTOIS.**

No. 28808.

St. Louis Court of Appeals.

Missouri.

March 16, 1954.

Richeson & Carr, Samuel Richeson, Potosi, for appellant.

Thurman, Nixon & Blackwell, Earl R. Blackwell, Hillsboro, for respondents.

HOUSER, Commissioner.

Action for damages for breach of a lease.

The amended petition alleged a written lease by which plaintiffs Hubert Agers and Ruth Agers let to defendant George F. Courtois a certain business property in De-Soto, Missouri for a term of five years from February 1, 1950 at a rental of $100 per month. It further alleged breach of the lease by abandonment of the premises on July 1, 1950; lack of consent on the part of lessors to the abandonment; refusal by them to accept surrender of the lease; notification to lessee that the premises would be re-let for his benefit; vacancy for a period of six and one-half months; diligence in attempting to re-lease to others; rental in January, 1951 to the telephone company for seven months at $50 per month; oral rental in September, 1951 to Kane Chevrolet Company for seven months at

$50 per month; the written lease of the property to the automobile company in April, 1952 for a term of three years at a rental of $50 per month, and prayed for $3,075 accrued on rentals due and unpaid. Defendant-lessee pleaded surrender and cancellation. Tried to a jury, a verdict was rendered for plaintiffs for $325 and judgment was rendered accordingly. Defendant filed a motion to set aside the verdict and judgment for plaintiffs and to render judgment for defendant. Plaintiffs filed a motion for judgment in the amount of $3,075 on the ground that they were entitled to that amount under the uncontradicted evidence. Plaintiffs also filed a motion for a new trial on the issue of damages only. The trial court overruled defendant's motion, and overruled plaintiffs' motion for judgment in the amount of $3,075, but sustained plaintiffs' motion for a new trial on the issue of damages only. In due course defendant appealed to this court.

In this opinion we will refer to plaintiffs or plaintiff Hubert Agers as "lessor" and defendant George F. Courtois as "lessee."

The lease contained no provision relating to the rights of the parties upon abandonment of the premises by lessee prior to the end of the term, and no provision governing the situation upon default in the payment of rent other than that if any rental installment be in default for ten days the lessee would render "peaceful" possession upon request by the lessor. Lessee occupied the premises for four months, but moved away on May 30, 1950, leaving two fixtures, a meat case and a vegetable rack. They remained in the store until June 30, 1950, at which time lessee moved them out. Around June 1 lessee told lessor that he was closing the store.

At that time, according to lessor, lessee was reminded that there was a five-year lease and he was asked what he was "going to do about it." Lessee said that he was going to do nothing and that lessor could do as he pleased, sue him or do anything he pleased, that he "wasn't paying nothing and wasn't even going to pay for the last month's rent." Thereupon lessor told lessee that he was "responsible." During June, 1950 lessee, at his own cost, advertised the premises for rent in a local newspaper, directing the public to contact lessor's business establishment for further information, and told lessor to "take calls," and show the building. There was evidence that lessee told lessor to rent the building, and told lessor that he "could get in contact with him" after showing the building to prospective tenants. During June, 1950 lessor also made efforts to rent the store and told lessee that he was "trying to rent the building for whatever (he) could get out of it." He advertised the store for rent in the local newspaper. He did not accept possession at any time for the purpose of occupying the space for his own business uses and purposes, but he did control the possession of the premises for the purpose of re-letting. About a month after the conversation between lessor and lessee above referred to lessee came into lessor's business place, threw a check and the written lease on the counter, and said "Here is your check for last month's rent" and walked out without further conversation. The keys to the premises were never returned. After the fixtures were moved out on June 30 lessor "pulled the door to" but was unable to lock it. The premises stayed unlocked for about two weeks after the fixtures were moved out. Then lessor had new keys made for the locks. A month after lessee moved out lessor painted "For Rent" signs on the outside of the windows, continued to advertise in the newspapers, "saw different people" and tried to rent the premises. From July 1, 1950 to the middle of January, 1951 the building was vacant and plaintiffs received no rent for that period. From January 15, 1951 to September, 1951 the premises were rented to the telephone company at the rate of $50 per month. From September, 1951 to April 2, 1952 the premises were rented under an oral month-to-month tenancy to Kane Chevrolet Company for $50 per month. On the latter date plaintiffs entered into a three-year written lease with Kane Chevrolet Company at $50 per month. Lessee was never upon or about the premises after he moved out in June, 1950.

When lessor rented the property to the telephone company and to Mr. Kane he did not consult with lessee because he "did not know where to find him."

Lessee's version of the facts was that he had a discussion with lessor and they agreed that he should leave the premises; that it was "all right" for lessee to "go ahead and leave." He testified to an agreement that he would leave the meat case and vegetable rack, advertise the store for rent partly furnished and if the premises were not rented or the fixtures sold lessee would pay "whatever we thought was right" as storage on the fixtures. He moved his store during the last week in May and moved the fixtures out on June 30, 1950. He ran an advertisement on June 8, 1950 in the Jefferson Republic, and paid for the ad "to help him rent the building and of course sell my fixtures along with it." Clifford Price, one of lessee's employees, "thought" lessor said that it would be "all right" for lessee to leave the fixtures there and he "would pay him a reasonable amount of rent for storing the two pieces of fixtures," but he did not remember and would not say for sure because it had been "two or three years ago." Lessee further testified that in June, 1950 he and lessor had a conversation in the office of Charley Seemel, a notary public, in which lessor would not give lessee any price on the storage of the fixtures but told him that he should have $75 for storing the two pieces of fixtures in the store for one month. Seemel testified that in a discussion concerning the rent and the closing of the store it was agreed that lessee was to leave some fixtures there and they were "going to try to rent with the idea that Mr. Courtois (lessee) would try to sell the fixtures at the time it was rented to a new tenant," but he did not hear anything said by lessor at that time that he was "agreeing or disagreeing to the fact that Mr. Courtois was closing and leaving the store." Lessee testified that after he had made out the check for $100 with the notation "Rent for June" thereon he learned that lessor wanted the lease back, and then added thereto the words "final" and "with lease accepted on building on St. Louis Street." Lessor testified that the latter words were not on the check at the time it was delivered to him, the inference being that they were added after the check was paid and cancelled.

For his first point lessee contends that the court erred in failing to direct a verdict in his favor and in failing to set aside the verdict for plaintiffs and enter a judgment in his favor because "all of the evidence clearly showed a surrender of the lease and acceptance thereof by plaintiffs." Lessee's second point is that there was no evidence to support the giving of Instruction No. 2, which required that the jury find that lessor informed lessee that the premises would be relet for lessee's benefit. We will consider these questions together, since they are interrelated.

A surrender of leased premises, whereby the lessee is relieved from the obligation to continue the payment of rents reserved thereunder, cannot be accomplished without the consent of the lessor. Thomas v. Roth, Mo.App., 157 S.W.2d 250. Whether there has been a surrender and acceptance is a question of the intention of the parties. Surrender and acceptance may be evidenced by an express agreement or it may be implied from the acts and conduct of lessor indicating his assent to accept the surrender. Whether there has been a surrender by operation of law is usually a question of fact for the jury. Schulte, Inc. v. Haas, Mo.App., 287 S.W. 816, and cases cited page 818.

Attending to the evidence most favorable to plaintiffs, it appears that when lessee informed lessor that he intended to abandon the premises lessor did not consent or acquiesce in the abandonment. On the contrary, he registered a protest by reminding lessee that there was a five-year lease and by asking him what he was going to do about it. Informed that lessee had no intention of fulfilling his obligation lessor told lessee that he was responsible and that lessor was trying to rent the place for whatever he could get out of it. Lessor did not retake possession of the premises for his

own use and enjoyment. He re-entered the premises for the sole purpose of re-letting them. Lessor's evidence indicated that lessee not only consented to the resumption of possession by lessor for the purpose of a re-letting, but also actively co-operated with lessor in his attempts to procure a new tenant. Lessee evidently did not consider that there was an acceptance of his attempted surrender because after moving out lessee, at his own expense, advertised the premises for rent and told lessor to "take calls," show the building and "get in contact" with him. Lessee thus, in effect, constituted lessor as his agent to effect a re-letting. Lessee left two pieces of equipment in the building for a month to facilitate the re-letting of the premises. Lessee did not return the keys to lessor. Although lessee threw the lease upon the counter in lessor's business establishment, there is no evidence that lessor accepted or retained the lease. Notwithstanding the rent check delivered to lessor on June 30, 1950 bore a notation that it was the final payment of rent under an acceptance of a surrender of the lease, there was strong evidence that the words indicating finality and acceptance of surrender were written on the instrument after it had been paid and cancelled. A finding of these facts would justify an inference by the jury that the lessor did not consent to the surrender of the lease and that the retaking of possession and re-letting of the premises by lessor was done as agent for lessee, on the account and for the benefit of lessee, and for the purpose of minimizing the damages.

The third point relied on is that the court erred in sustaining plaintiffs' motion for a new trial on the issue of damages only, because the verdict of the jury for $325 was not less than the amount to which plaintiffs would have been entitled under the most favorable view of the evidence. Plaintiffs take the position that the jury may have believed that the surrender occurred on July 1, 1950 but that the acceptance of the surrender by lessor was delayed until January 1, 1951 when the premises were let to the telephone company; that the tenant who preceded defendant in the occupancy of the premises had paid $45 per month; that the difference between $45 and $100 per month, or $55, times six months, would closely approximate the amount of the verdict and that the jury was trying to compensate lessor only for the difference in the rent for the six-month period during which the building had been vacant. The argument is wholly speculative. There is no conceivable way in which plaintiffs would have been entitled to the sum of $325, under the pleadings, evidence or instructions.

There is, however, some evidence in this record which, if developed on a retrial of the issue of damages, might entitle lessee to an instruction limiting the amount of the recovery of plaintiff to $650. Hubert Agers testified that lessee told lessor that he "could get in contact" with him after showing the place to prospective tenants. If in fact lessor's authority to re-let on account of the lessee and for the lessee's benefit was limited by the requirement that lessor first communicate such offers to lessee, and if in fact lessor, ignoring that limitation, re-let the premises on his own account as principal, thus exercising dominion over the premises inconsistent with the continuance of the relationship of landlord and tenant, the jury would be authorized to find that the lessor thus and thereby accepted the surrender of the premises on January 15, 1951, terminated the lease, and released lessee from further liability thereon. See Dorcich v. Time Oil Co., 103 Cal.App.2d 677, 230 P. 2d 10. In that event plaintiffs' recovery would be limited to the rent which accrued between the date of the abandonment and the date of the re-letting. Koblin v. Green, 265 App.Div. 972, 38 N.Y.S.2d 968; Dean v. Root, Sup., 62 N.Y.S.2d 33

Lessee makes the further point that the measure of damages instruction was erroneous. Since the cause must be remanded any objections to the sufficiency of the instruction may be easily met on resubmission, and we need not extend this opinion further in connection with this point.

For the reasons given the Commissioner recommends that the order of the circuit

court granting a new trial on the issue of damages alone be affirmed and that the verdict for plaintiffs and against defendant be held in abeyance on the issue of liability until the issue of damages is determined upon retrial, at which time final judgment disposing of all the issues shall be entered.

PER CURIAM.

The foregoing opinion of HOUSER, C., is adopted as the opinion of the court.

The order of the circuit court is affirmed and the verdict on the issue of liability is ordered to be held in abeyance until the issue of damages is determined upon retrial, at which time final judgment disposing of all the issues shall be entered.

ANDERSON, P. J., and RUDDY and BENNICK, JJ., concur.