Mildred **RAUTH**, Plaintiff-Respondent,

v.

O. C. **DENNISON**, Defendant-Appellant.

No. 8001.

Springfield Court of Appeals.

Missouri.

May 8, 1962.

Ronald J. Fuller, Rolla, for defendant-appellant.

Breuer, Northern & Crow, Rolla, for plaintiff-respondent.

STONE, Judge.

In this jury-waived court-tried action at law, defendant tenant appeals from the judgment of $975 entered against him for rental of the ground floor of a brick building in Rolla, Missouri, for three months from and after January 20, 1960.

Plaintiff owned a one-story brick building with full basement. The ground floor was divided into two storerooms by a center partition. In one storeroom, plaintiff and one Hardebeck had operated a hardware and sporting goods store for about seven years. During April or May 1959, plaintiff rented the other storeroom to defendant who immediately opened a furniture and appliance store there. The basement was occupied by a pool room. With defendant insisting that he needed more room, plaintiff and Hardebeck closed out their store at public auction on August 29, 1959, defendant and his sons knocked out the center partition on August 31, and plaintiff rented the entire first floor to defendant for $325 per month "plus two-

thirds of the heating bill and . . . the air conditioning." When defendant took the entire first floor, plaintiff "asked him for a lease . . . and he said that he would be willing to sign a lease, that . . . he wanted the building for five years, ten years, or he said, 'I'll be here hereafter.' " Defendant's son, who managed the store and had participated in the conversations with plaintiff, confirmed the fact that his father had agreed to give plaintiff "a long term lease"—"we expected to give her a lease as well as she expected to have one; that's only business." But, when a written lease was presented to defendant, he refused to sign it. After offering the innocuous explanation that "we asked to rewrite a few phrases," the son conceded that one of the points of disagreement was that, while defendant wanted "a long term lease," he "wanted the right to terminate any time (he) got ready to terminate." Having already vacated the building herself, permitted removal of the partition, and turned over the entire first floor to defendant, plaintiff apparently consoled herself with defendant's oral assurance that "his word was as good as a bond." In any event, there was no written lease.

The parties agree that the cash rental of $325 per month for the entire first floor began on September 20, 1959; that the cash rentals for the monthly rent periods commencing on September 20, October 20, November 20 and December 20, 1959, were paid in full; and that no portion of the rental for the month commencing January 20, 1960, or for any subsequent monthly rent period was tendered or paid. There was much testimony, in many respects conflicting, concerning conversations between the parties prior to January 20, 1960. One of those conversations was shortly after defendant had been in the hospital in November 1959. *Defendant's* version of that conversation was that he told plaintiff "that we had a party that was interested in the store, and asked her (plaintiff) . . . if I could bring him over and talk to her about renting it and all, and she said she'd

be glad to"—"I told her at that time that we either had to do one of the two, sell it or vacate it, and she said, 'Do the best you can, we'll work with you.'" *Plaintiff's* summation of that conversation was that "he (defendant) thought he had a buyer and would I work with the buyer . . . in regard to the rent . . . and I told him that I would," but plaintiff insisted that defendant said nothing about vacating her building. *Defendant* stated, but *plaintiff* denied, that on two or three occasions prior to December 20, 1959, he (defendant) "told her that I was going to have to leave, that I would give her a 30-day notice; I was gonna tell her now that on the 20th I'll bring you a check and that'll be the last month." And, *defendant* also asserted, but *Hardebeck* denied, that on December 20, 1959, he (defendant) delivered the rent check for the ensuing month to Hardebeck (in plaintiff's absence) at another place of business jointly operated by her and Hardebeck and "told him to give it to (plaintiff) and tell her that we'll be out by the 20th and I'll turn in her keys the 20th of next month."

According to plaintiff, knowledge of defendant's intention to vacate her building first came to her about January 10, 1960, when an unidentified third party told her that defendant had moved his stock and inquired of her whether the building was for rent. This motivated a telephone call to defendant, in the course of which plaintiff said "I hear you're moving" and defendant confirmed that fact. When she looked in the building that evening, plaintiff saw that "practically everything was out but refrigerators and appliances." Nothing further is shown to have occurred until the afternoon of January 20, 1960, when defendant came to the place of business operated by plaintiff and Hardebeck and laid the keys to the rented building on a desk. This was *defendant's* terse account of the conversation that afternoon: "I said, 'I'm sorry, Mrs. Rauth, that everything turned out as bad as it has.' She said, 'Well, I am too, Mr. Dennison,' said, 'It

could be worse maybe.' Let it go at that. There wasn't too much said." *Plaintiff's* report of the same conversation was: "Well, he (defendant) apologized and he was very sorry, and I asked him whether he thought it was quite fair to me to just walk out of the building, and . . . Mr. Hardebeck said, 'What if you'd a-had a lease?' 'Well,' he said, 'that'd be a different thing.' And he (Hardebeck) said, 'What about your word being as good as your bond—as a bond?' And with that Mr. Dennison grew angry and just went out the door. He said nothing more."

Either that same day or within a day or so thereafter, plaintiff entered the vacated building to check doors, windows, heat and water. On the following day, towit, on January 21, 1960, plaintiff's attorneys wrote defendant at length, (a) notifying him that he then owed the cash rent of $325 "which was due and payable on January 20th," $71.05 as "the fuel bill up to January 1, 1960," $25.52 as "the fuel bill from January 1 to January 20, 1960," and $25 as the estimated fuel bill for the month commencing January 20, (b) stating that "the law requires one who is occupying property on a month to month basis to give a written notice of his intention to terminate the month to month tenancy," (c) pointing out that plaintiff had "vacated the premises and made them available to you at a tremendous expense to herself," (d) demanding payment of the listed items, and (e) warning of suit if payment was not forthcoming. In response to that letter, defendant mailed a check for the items of $71.05 and $25.52, his portion of the heating bills to January 20, 1960. There was no other payment by defendant and no further contact or communication between the parties or their representatives prior to suit.

A "for rent" sign was painted on, or placed in, the front window of the vacated building sometime after January 20—defendant said within eight to ten days thereafter, witness Hardebeck thought "at least thirty days or more after the building was vacated," while plaintiff repeatedly an-

swered "I do not know" when urged to express her judgment on this subject. Upon permission granted by plaintiff but with no profit or payment to her, "charitable organizations" conducted several rummage sales in the vacated building before it was rerented by plaintiff on May 24, 1960. Defendant thought that the first rummage sale was held "only a few days" after January 20, while plaintiff stood on "I wouldn't know" when pressed for information in this area. Plaintiff replaced the center partition in the vacated building, dividing the ground floor into two storerooms. This was, so she said, "somewhere around" April 24, 1960, while defendant "imagined" it was "somewhere around" thirty days after he had moved.

■ Admitting that his tenancy was from month to month and that he gave no notice in writing of his intention to terminate that tenancy [Laws of 1951, p. 747; V.A.M.S. § 441.060], defendant denies liability for payment of any additional rental because, so he asserts, there was "a surrender by operation of law" on January 20, 1960. In essence, defendant's contention is that, when he laid the keys on a desk in plaintiff's office on the afternoon of January 20, 1960, she had "a duty, as landlord, to speak up if she did not mutually agree to the surrender," that ·she then "failed by word and deed to convey such notice to defendant as would prevent an acceptance of a surrender by operation of law," and that she accepted "surrender of the premises by defendant on January 20." Defendant apparently treats subsequent events, i. e., the placing of the "for rent" sign on or in the front window, the holding of rummage sales in the vacated building by charitable organizations, and the replacement of the center partition, as confirming plaintiff's alleged acceptance of the surrender on January 20.

■ Running through all of the reported cases in this field of law is the principle that a surrender of premises by the tenant and an acceptance thereof by the landlord must be consummated by mutual consent and agreement of the parties.[1] If the surrender be accomplished by implied agreement, "it is said to be done by operation of law, and the intention of the parties is to be implied from the acts and conduct of the respective parties, as disclosed by the attending facts and circumstances. 'A surrender by operation of law occurs where the parties, without express surrender, do some act or acts from which it is necessarily implied that they have both agreed to consider the surrender as made—acts which are necessarily inconsistent with the continued relation of landlord and tenant . . .'" Von Schleinitz v. North Hotel Co., 323 Mo. 1110, 1132, 23 S.W.2d 64, 74; Zoglin v. Layland, Mo.App., 328 S.W.2d 718, 722–723. Many of the cases emphasize that the landlord's intention to release the tenant from further payment of rent is essential to a surrender by operation of law,[2] although it is recognized that "'(w)hile it

1. Crow v. Kaupp, Mo., 50 S.W.2d 995, 998 (4); Livermore & Cooley v. Eddy's Adm'r., 33 Mo. 547, 551; Agers v. Courtois, Mo.App., 266 S.W.2d 5, 7(1); Babcock v. Rieger, Mo.App., 76 S.W.2d 731, 735; Shattlock Realty Co. v. Mays, 228 Mo.App. 1108, 1115, 63 S.W.2d 429, 432; D. A. Schulte, Inc. v. Haas, 224 Mo.App. 365, 368, 287 S.W. 816, 817–818(1); Sessinghaus v. Knocke, 127 Mo.App. 300, 105 S.W. 283; Sander v. Holstein Commission Co., 118 Mo.App. 29, 121 Mo.App. 293, 298, 99 S.W. 12, 13; Robertson v. Winslow, 99 Mo.App. 546, 74 S.W. 442, 443; Churchill v. Lammers, 60 Mo.App. 244, 248–249(1); Hulsing v. Roll, 43 Mo.App. 234, 238–239(1); Hotz v. Federal Reserve Bank of Kansas City, Mo., 8 Cir., 108 F.2d 216, 219 (4, 5).

2. Agers v. Courtois, supra, 266 S.W.2d loc. cit. 7(2); Shattlock Realty Co. v. Mays, supra, 63 S.W.2d loc. cit. 432; D. A. Schulte, Inc. v. Haas, supra, 287 S.W. loc. cit. 818(4); Leggett v. Louisiana Purchase Exposition Co., 157 Mo. App. 108, 119, 137 S.W. 893, 896(5); Sessinghaus v. Knocke, supra; Sander v. Holstein Commission Co., supra, 121 Mo.App. loc. cit. 298, 99 S.W. loc. cit. 13.

has frequently been said that whether a lease has been terminated by operation of law is a question of intention of the parties, it is, nevertheless, held that this mutual agreement may be implied, upon the principle of estoppel, from the acts of the parties, independently of, and even contrary to, their actual intent.'" Von Schleinitz v. North Hotel Co., supra, 323 Mo. loc. cit. 1132, 23 S.W.2d loc. cit. 74; Zoglin v. Layland, supra, 328 S.W.2d loc. cit. 723.

■ Although the acts and conduct of the parties may be such as to make the basic question of intention one of law [D. A. Schulte, Inc. v. Haas, 224 Mo.App. 365, 287 S.W. 816, 818(5); Huling v. Roll, 43 Mo.App. 234, 239, 243], it usually remains a question of fact to be determined as such. Agers v. Courtois, Mo.App., 266 S.W.2d 5, 7(3); Shattlock Realty Co. v. Mays, 228 Mo.App. 1108, 1115, 63 S.W.2d 429, 432; D. A. Schulte, Inc. v. Haas, supra, 287 S.W. loc. cit. 818(4). So, our Missouri cases have said that neither the delivery of the keys to the landlord [Livermore & Cooley v. Eddy's Adm'r., 33 Mo. 547; Prentiss v. Warne, 10 Mo. 601; Buck v. Lewis, 46 Mo. App. 227], nor his efforts to rerent the abandoned premises (Fischman v. Kiphart, Mo.App., 297 S.W.2d 784, 786(3, 4); Sessinghaus v. Knocke, 127 Mo.App. 300, 105 S.W. 283; Buck v. Lewis, supra], nor his repairing or renovating thereof [Livermore & Cooley v. Eddy's Adm'r., supra; Sessinghaus v. Knocke, supra], nor his temporary storage of some articles therein [Sander v. Holstein Commission Co., 118 Mo.App. 29, 121 Mo.App. 293, 99 S.W. 12], nor some delay in demanding of the tenant payment of the next month's rent [Fischman v. Kiphart, supra, 297 S.W.2d loc. cit. 786(4)] *compels* a finding that the tenant's attempted surrender of the premises was accepted by the landlord. For that matter, in most of the cases cited by instant defendant [e. g., Agers v. Courtois, supra, 266 S.W.2d loc. cit. 7–8(3, 4); Wahl v. Hinchey, Mo.App., 72 S.W.2d 497, 499; Churchill v. Lammers, 60 Mo.App. 244; Buck v. Lewis, supra], intention was determined as a question of fact in the trial court and, upon appeal, was treated and reviewed as such.

Defendant stresses the statement that "the authorities are somewhat in conflict respecting what particular acts or conduct on the part of the landlord are sufficient to raise the implication that the landlord has acquiesced and consented to a surrender of the leased premises by the tenant" but that "(i)t appears to be the weight of juristic authority . . . that, in order to prevent an acceptance of a surrender by operation of law, the landlord must, either by word or by act, convey to the tenant notice that the landlord resumes possession of the premises for the benefit of the tenant, and not for the benefit of the landlord." Von Schleinitz v. North Hotel Co., supra, 323 Mo. loc. cit. 1133, 23 S.W.2d loc. cit. 75; Zoglin v. Layland, supra, 328 S.W.2d loc. cit. 723. However, in both Von Schleinitz and Zoglin, supra, the landlord took possession of demised premises in which an income-producing (although perhaps not then lucrative) business was being conducted and thereafter continued to operate that business and to retain the cash receipts therefrom, without any notice to the dispossessed tenant that the landlord was acting as agent for the tenant or would look to the tenant for any rental loss or deficiency.

Without rehashing the facts already reported in more tedious detail than proper disposition of the case requires, it will suffice to remind ourselves at this point that, when defendant came to plaintiff's office on January 20, he admittedly opened his very brief conversation with an apology —in his language, "I'm sorry, Mrs. Rauth, that everything turned out as bad as it has"; and that, if plaintiff and witness Hardebeck are to be believed, plaintiff's response was not (as we are convinced), either in language or in import, reasonably to be construed as consent to defendant's abandonment of the rented building—for plaintiff said, "I asked him whether he thought it was quite fair to me to just walk out of

the building," or as Hardebeck testified, "it wasn't just exactly the right thing to do to move out." True, plaintiff did not *then* make specific demand upon defendant for payment of further rental, mayhap because defendant (so it is reported) beat an abrupt exit when Hardebeck followed with the conscience-pricking, anger-provoking query, "What about your word being as good as your bond?" But, such doubt as defendant may have hopefully invited and secretly nurtured concerning plaintiff's purpose and intention to hold him for further rental was dispelled within twenty-four to forty-eight hours by the letter from plaintiff's counsel which, as defendant admitted, he received on January 21 or 22.

■■ Viewed in the light most favorable to him, we doubt whether defendant made a submissible case on his affirmative defense that there was a surrender of the vacated building by operation of law on January 20, 1960; but, *even if* he did, certainly the evidence did no more than raise an issue for determination by the trier of the facts. See again Agers, Shattlock, Schulte, Sessinghaus and Sander, supra. With no specific findings of fact requested or made, this issue was ruled against defendant by the general finding and judgment for plaintiff. Rule 73.01(b), V.A. M.R.; V.A.M.S. § 510.310(2); Sando v. Phillips, Mo., 319 S.W.2d 648, 652(9); Shirley v. Norfleet, Mo., 315 S.W.2d 715, 721; Hymer v. Dude Hinton Pontiac, Inc., Mo.App., 332 S.W.2d 467, 469(1). Although, in a court-tried action, it is our duty to "review the case upon both the law and the evidence as in suits of an equitable nature," we are directed to accord due deference to the opportunity of the trial court to judge of the credibility of the witnesses and we are enjoined from setting aside the judgment unless it is clearly erroneous. Rule 73.01(d), V.A.M.R.; V.A. M.S. § 510.310(4); Beckemeier v. Baessler, Mo., 270 S.W.2d 782, 783(1); Macy v. Day, Mo.App., 346 S.W.2d 555, 558. Mindful of these fundamental principles of appellate review, we should not, on the record before us, strain for a contrary and (as we think) unjustified conclusion on the issue under consideration; and we hold, as did the court nisi, that there was no surrender of the vacated building by operation of law on January 20, 1960.

■ If (as defendant asserts but plaintiff denies) defendant gave *verbal* notice prior to December 20, 1959, of intention to terminate his tenancy at the end of the monthly rent period commencing on that date, such notice was "worthless in legal effect" [Berner v. Gebhardt, 87 Mo.App. 409, 413]; and, of course, whatever defendant may have said in his telephone conversation with plaintiff about January 10, 1960, was just as ineffectual in law. To have terminated his tenancy at the close of the monthly rent period commencing on January 20, 1960, it would have been necessary for defendant to have given written notice as required by statute [Laws of 1951, p. 747; V.A.M.S. § 441.060] *prior to January 20.* Corby v. Brill Book & Stationery Co., 76 Mo.App. 506, 508(1); Berner v. Gebhardt, supra, 87 Mo.App. loc. cit. 413–414(3); Fisher v. Payton, Mo.App., 219 S.W.2d 293, 296(9, 11); annotation 86 A.L.R. 1346. But, admittedly the monthly rent period commencing on December 20, 1959, expired and the succeeding monthly rent period commencing on January 20, 1960, began without any written notice from defendant. Having suffered the new monthly rent period to begin without the required statutory notice to plaintiff, defendant could not have terminated his month to month tenancy until the end of the next rent period, i. e., until the end of the month commencing on February 20, 1960; and, *to do that, it would have been necessary for him to have given appropriate written notice to plaintiff prior to February 20, 1960.* Gunn v. Sinclair, 52 Mo. 327, 330; Corby v. Brill Book & Stationery Co., supra, 76 Mo.App. loc. cit. 508; Fisher v. Payton, supra, 219 S.W.2d loc. cit. 296.

Without a surrender of the premises by the tenant and an acceptance thereof by the

landlord consummated by mutual consent and agreement of the parties, either express or implied, a month to month tenancy may be terminated in no other way than by giving the written notice contemplated and required by statute. Smith v. Smith Bros., 62 Mo.App. 596, 601(3); Berner v. Gebhardt, supra, 87 Mo.App. loc. cit. 414; Longacre v. Longacre, 132 Mo.App. 192, 196, 111 S.W. 855, 856. Statements are found to the effect that a month to month tenant who, without the landlord's consent, vacates premises without having given the required written notice to the landlord remains liable for payment of rent for the succeeding month. Buck v. Lewis, supra, 46 Mo.App. loc. cit. 230–231; Sessinghaus v. Knoche, 137 Mo.App. 323, 327, 118 S.W. 104, 106; Wahl v. Hinchey, supra, 72 S.W. 2d loc. cit. 498. But, when these statements are read in context and considered in the light of the facts of the particular cases in which they appear, it becomes abundantly clear that they were not intended to limit, and do not limit, recovery under all circumstances to a single month. In Buck and Sessinghaus, supra, plaintiff in each case sought only one month's rent. In Sessinghaus, supra, the court firmly stated that plaintiff landlord's instruction 5, which directed the jury "that the only way defendant (tenant) could terminate the (month to month) tenancy and end his liability for rent was to give the plaintiff or her agent written notice of his intention to terminate . . .," "certainly declared the law." [137 Mo.App. loc. cit. 325–326, 118 S.W. loc. cit. 106] And in Wahl, supra, where the jury had found that there was a surrender by operation of law by virtue of "a fully consummated agreement to vacate the premises" [72 S.W.2d loc. cit. 499], the appellate court approvingly quoted Smith, supra, to the effect that, " 'where there is a tenancy from month to month, the only way that the tenant can terminate it is by giving the written notice required by the statute.' " [72 S.W.2d loc. cit. 498] In Smith, supra, the suit was "to recover the rent for the *four months* next after the defendants (tenants) quit" [62 Mo.App. loc. cit.

600], and in Sessinghaus v. Knoche, supra, the suit was "to recover the rent for the month of March, 1906," the *third month* after defendant had abandoned the rented premises about December 20, 1905. [127 Mo.App. loc. cit. 302, 105 S.W. 283]

Plaintiff's replacement of the center partition in the vacated building which occurred (so she said) about April 24, 1960, reasonably may be regarded (and apparently her counsel so regard it) as an act evidencing her acceptance of defendant's surrender of the building. True it is, as defendant emphasizes, that at some time prior to April 24 a "for rent" sign was placed on or in the front window [cf. Fischman v. Kiphart, supra, 297 S.W.2d loc. cit. 786 (3, 4); Sessinghaus v. Knoche, supra] and that, on some date or dates prior to April 24 which, from the record, can neither be fixed nor fairly approximated with reasonable confidence or assurance, some charitable organizations conducted a rummage sale or sales in the building. But, as plaintiff said, when charitable organizations seek permission so to use an empty building in a neighborly Ozark community, "there's no way of turning them down"; and, after defendant had abandoned the building with no purpose or desire to occupy it further, it would be grossly unjust to construe use of the building for a rummage sale or sales by charitable organizations as *conclusively* demonstrating plaintiff's intention to release defendant from payment of rent (an inescapable concomitant of a landlord's acceptance of a tenant's surrender of rented premises), when palpably plaintiff's intention was to the contrary as *theretofore* had been evidenced by her counsel's letter to defendant. Cf. Sander v. Holstein Commission Co., supra, 121 Mo.App. loc. cit. 299, 99 S.W. loc. cit. 13–14.

Again, *if* (as we need not determine) defendant made a *prima facie* case permitting a finding of surrender by operation of law after January 20 but prior to April 19 (the end date of the three-month period for which rent was sought), certain-

ly the evidence did no more than make this a question of fact necessarily depending in large measure upon the weight and credibility to be accorded to the oral testimony, of which the trial court obviously was in a superior position to judge. With the burden of establishing any surrender by operation of law resting upon defendant [Churchill v. Lammers, supra, 60 Mo.App. loc. cit. 249], we cannot say that the judgment nisi was clearly erroneous. Rule 73.01(d), V.A.M.R.; V.A.M.S. § 510.310 (4).

Accordingly, it should be and is affirmed.

RUARK, P. J., and McDOWELL, J., concur.